## GEORGE SPARHAWK *vs.* MARY S. SPARHAWK.

Middlesex. October 31. — November 25, 1874.

## AUGUSTUS J. THOMPSON *vs.* NANCY J. THOMPSON.

Suffolk. November 16. — 25, 1874. WELLS & DEVENS, JJ., absent.

The St. of 1874, *c.* 397, § 1, providing that "all divorces *nisi* heretofore decreed under and by authority of" the St. of 1870, *c.* 404, "shall be deemed and taken to be, and have the force and effect of, absolute divorces from the bonds of matrimony," and that the justices of this court, upon petition and notice, may authorize the party, against whom such divorce has been granted, to marry again, is unconstitutional and void.

PETITIONS under the St. of 1874, *c.* 397, § 1, for leave to marry again. Each petitioner alleged that his wife had obtained from him in 1872 a divorce *nisi* under the St. of 1870, *c.* 404, for the cause, in the first case, of extreme cruelty, and, in the second, of cruel and abusive treatment.

Upon the first petition being presented on August 13, 1874, in vacation, with a request for an order of notice by publication, *Gray*, C. J., reserved for the consideration of the full court the question of law whether upon the facts alleged the petition could be entertained. The case was submitted upon briefs.

*G. Sparhawk, pro se.*

*H. G. Parker*, as *amicus curiæ, contra.*

In the second case, an order of notice having been issued and returned at September term 1874, it appeared that the petitioner had been divorced as alleged and not otherwise; and *Morton*, J., found that upon the evidence the prayer of the petitioner ought to be granted, if upon the facts above stated it was lawful so to do, and reserved that question for the determination of the full court.

*J. D. Long*, for the petitioner.

GRAY, C. J.   The question presented by these two cases is of the validity of the St. of 1874, *c.* 397, § 1, by which the Legislature has enacted that " all divorces *nisi* heretofore decreed under and by authority of " the St. of 1870, *c.* 404, " shall be deemed and taken to be, and have the force and effect of, absolute divorces from the bonds of matrimony; and the justices of the Supreme Judicial Court, upon petition filed by the party against whom such divorce has been granted, and upon such notice as the court shall order, may authorize such party to marry again."

The question thus presented for the determination of the court is of the greatest importance, involving a consideration of the constitutional boundary between the legislative and the judicial departments in this Commonwealth, and deeply affecting the rights and duties of many of its citizens; for if this enactment is invalid, innocent persons, who, relying upon its terms, have contracted a new marriage since its passage, may find that their marriage is unlawful; and if it is valid, husbands and wives, temporarily separated, who intend to return to one another, or some even who are actually reunited, may find themselves absolutely divorced, without any petition by either, and perhaps against the wishes of both.

Owing to the importance of the question, the earliest opportunity was afforded to bring it before the full court, and one of these cases having been submitted upon briefs, the subject has been considered by all the judges.

To declare a divorce between husband and wife involves an investigation of a judicial nature.   2 Kent Com. (12th ed.) 106. *Shaw* v. *Gould*, L. R. 3 H. L. 55, 91.   Whether such a power can be exercised by the legislative department depends upon the

Constitution of the state. The authorities elsewhere upon the subject are fully collected and classified in 1 Bishop on Marriage & Divorce, (5th ed.) *c.* 39, and in Cooley on Constitutional Limitations, (3d ed.) 109 *& seq.* But it is unnecessary to consider them, because the provisions of our own Constitution are decisive.

The 30th article of the Declaration of Rights prefixed to the Constitution declares that in the government of this Commonwealth the legislative department shall never exercise the executive and judicial powers or either of them. The third chapter of the Constitution, entitled " Judiciary Power," contains this article : " All causes of marriage, divorce and alimony, and all appeals from the judges of probate, shall be heard and determined by the Governor and Council, until the Legislature shall by law make other provision." The word " causes " is evidently here used as equivalent to " controversies " or " cases ; " and the terms, as well as the position of this article in the Constitution, manifest the intention of the people, in establishing a frame of government, to commit the hearing and determination of all cases of divorce and probate appeals to the judiciary only. The reason for temporarily entrusting the jurisdiction of these matters to the Governor and Council doubtless was that it had been vested in them under the Province Charter.

The probate jurisdiction was reserved to the Governor and Council by the terms of the Charter itself. One of the earliest acts of the General Court of the Province provided that " all controversies concerning marriage and divorce shall be heard and determined by the Governor and Council ; " and another act, not long after, authorized them, upon proof of long absence of a husband or wife without being heard of, to declare that the other party should be deemed single and unmarried, and to grant leave to that party to marry again. Prov. Sts. 1692–93, (4 W. & M.) *c.* 25, § 4 ; 1698, (10 W. III.) *c.* 19 ; 1 Prov. Laws, (State ed.) 15, 61, 354 ; Anc. Chart. 32, 243, 322. The Governor and Council having been thus constituted a Supreme Court of Probate, and a court for the decision of cases of marriage and divorce, their proceedings as such, though not according to the course of the common law, were judicial, and were determined by a vote of a majority of those present, even if the Governor was in the minority. This was settled by the Privy Council in England, after long

differences between the Governor and the Council of the Prov-
ince, as appears from a message of Governor Hutchinson and the
answer of the House of Representatives in 1774, the material
parts of which are printed in a collection of Massachusetts State
Papers, 1765–1775, published in Boston in 1818, 410, 411.   See
also Message of Governor Pownall to the Council in 1760, Quincy,
573 ; *Peters* v. *Peters*, 8 Cush. 529, 541.

The only instance, known to us, in which the Legislature of
Massachusetts passed an act dissolving a marriage, since the
Province Charter and before the adoption of the Constitution,
· was during the Revolutionary War, after the departure of the
royal Governor and Lieutenant Governor, and while there was
no court in the State authorized to grant divorces.   St. March
session 1780, *c.* 7 ; Mass. State Laws, 1775–1780, 287.

The Legislature, in the execution of the power conferred upon
it by the Constitution of the Commonwealth, provided by the St.
of 1783, *c.* 46, § 3, that this court should be the Supreme Court
of Probate ; and by the St. of 1785, *c.* 69, that all questions of
divorce and alimony should be heard and tried by this court, and
that its decrees should be final ; and the same jurisdiction has
remained in this court to the present day.   In 1792, Governor
Hancock disapproved a resolve granting a divorce, as being be-
yond the constitutional power of the Legislature ; and although
a few similar resolves or acts have been passed in recent times,
they have never been recognized as valid by this court.   *Shan-
non* v. *Shannon*, 2 Gray, 285, 287.   *White* v. *White*, 105 Mass.
325.

The Legislature undoubtedly has the power by general laws
to specify the grounds and regulate the forms of divorce in future
cases ; and even to authorize this court to entertain applications
for an absolute divorce for causes already occurred, and which at
the time of their occurrence were grounds for a divorce from
bed and board only.   *Stevens* v. *Stevens*, 1 Met. 279.

But the Legislature has no power under the Constitution of
Massachusetts to grant divorces.   Nor can it substantially alter
the nature and effect of judgments or decrees already ren-
dered by the courts, without violating the Constitution which
prohibits it from exercising judicial power.   *Denny* v. *Matteon*,
2 Allen, 361.

The General Statutes, like the earlier statutes of the Commonwealth, provided that for certain causes this court might grant a divorce from the bond of matrimony ; for certain other causes, a divorce from bed and board, and also, after such a divorce from bed and board, and the parties had lived separately for five consecutive years, a divorce from the bond of matrimony on the petition of the party who obtained the divorce from bed and board, or, after they had lived separately for ten years, on the application of either party.    Gen. Sts. *c.* 107, §§ 6, 7, 9, 10.

The St. of 1870, *c.* 404, substituted, for the decree of divorce from bed and board, a decree of divorce *nisi* under the provisions of that act, to become void if the parties should live together again at any time before it was made absolute, and to be made absolute by the court, on the application of either party, and proof that the parties had continued to live separately for five (or, at the discretion of the court, three) consecutive years next after the decree *nisi.*    That statute did but change names and forms of proceeding, and shorten the time within which, after a decree of separation, an absolute and final decree of divorce might be rendered.    The decree of divorce *nisi* was in substance and effect a divorce from bed and board ; it did not absolutely dissolve the marriage ; and it could be made absolute, even as regarded the innocent party, only on a further judicial hearing and determination upon a new petition by one party and notice to the other.    *Bigelow* v. *Bigelow*, 108 Mass. 38.    *Graves* v. *Graves*, Ib. 314.    *Edgerly* v. *Edgerly*, 112 Mass. 53.    *Garnett* v. *Garnett*, 114 Mass.

The St. of 1873, *c.* 371, expressly repealed the provisions of the St. of 1870 as to granting a divorce *nisi* and making the same absolute, and the effect of the parties living together again ; and authorized this court to grant an absolute divorce from the bonds of matrimony, either for any cause for which a divorce *nisi* might then be granted, or on the petition of any party to whom a divorce *nisi* or from bed and board had been decreed, with this limitation only, that when the cause was desertion, the desertion, in the first alternative, and the living apart since the qualified divorce, in the second alternative, must have continued three consecutive years.    This statute, while it multiplied the causes which would warrant the granting of a divorce from the bonds of matri-

**mony,** so as to include those which had previously been grounds of divorce *nisi* or from bed and board only; and abridged the time in which a party who had obtained a divorce of the latter character might apply for an absolute one; still left the question, whether an absolute divorce should be granted, to be determined by the judicial discretion of the court, as applied to the facts of each case.

The provision of the St. of 1870, which declared that a decree of divorce *nisi* under that act should become void if the parties lived together again before it was made absolute, having been repealed by the St. of 1873, such cohabitation, after the passage of this statute, would not of itself avoid or annul the decree of divorce *nisi;* but it was a fact to be allowed such weight and effect, in connection with the other circumstances of the case, as the court, at the hearing of a petition for an absolute divorce, should adjudge it to be legally entitled to.

The provision of the St. of 1874, *c.* 397, § 1, that "all divorces *nisi* heretofore decreed" under the St. of 1870 "shall be deemed and taken to be and have the force and effect of absolute divorces from the bonds of matrimony," goes beyond all former statutes. Giving it effect according to its terms, husbands and wives, who, having been divorced from bed and board under the St. of 1870, had come together again since the St. of 1873 took effect, would find their marriage dissolved, and their children, born or begotten during such cohabitation, illegitimate. And, apart from such extreme cases, it would, in all to which it purports to apply, sever, without judicial process, hearing or decree, the existing bond of matrimony between the parties; make those, who were still husband and wife, no longer such; and effect this result by attributing to judicial decrees, rendered before its passage, a force and operation which they did not have when they were made. We are unanimously of opinion that this exceeds the power of the Legislature under the Constitution of the Commonwealth.

The further provision of the same section, that the court, upon petition filed by the party against whom a divorce *nisi* has been granted, may authorize such party to marry again, is so based upon and connected with the previous provision, that it cannot be deemed to have been intended by the Legislature to have any separate force. The whole section is therefore unconstitutional and

void.  *Warren* v. *Mayor & Aldermen of Charlestown,* 2 Gray, 84.
To hold otherwise would be to impute to the Legislature the pur-
pose that a man who was still the husband of one wife might be
authorized by this court to marry another.

*Petitions dismissed.*