UNITED STATES v. GLEASON.

(Circuit Court, E. D. New York. January 30, 1897.)

NATURALIZATION—ISSUANCE OF CERTIFICATE—CONCLUSIVENESS.

The administration of the oaths and issuing of a certificate to an applicant for naturalization by a court having jurisdiction of such applications constitute a judgment of admission to citizenship, which is conclusive as to the existence of the necessary facts and the status of the applicant; and such certificate cannot be set aside upon the ground that the facts were falsely represented to the court.

James L. Bennett, U. S. Atty.

F. H. Van Vechten, for defendant.

WHEELER, District Judge. This cause has been heard on demurrer to the bill, which alleges, in substance, that the defendant was born prior to April 6, 1841, at Fishmoyne, in the parish of Down and Inch, and county of Tipperary, Ireland, and was an alien; that he remained there till 1882, when he came to this country, and arrived at New York about May 13th of that year, when over 18 and about 20 years old; that on October 22, 1867, without having made any declaration of intention to become a citizen of the United States, he presented a petition for naturalization to the superior court of the city of New York, setting forth, among other things, that he had resided in the United States 3 years next prior to arriving at the age of 21 years, knowing this to be false; that thereupon the required oaths were taken, and a certificate in due form was issued out of, and under the seal of, that court, showing that he had complied with the stat-

utes in such case made and provided, and had become qualified as a naturalized citizen of the United States, which he then knew, and the plaintiff did not till July, 1896, know, to be false. The prayer of the bill is for a decree that he was not then qualified to become a citizen of the United States; that the certificate was obtained by this false representation; that it be ordered to be surrendered by him, and be canceled; and for further relief.

The constitution provided (article 1, § 8) that the congress should have power "to establish a uniform rule of naturalization"; and (by article 4, § 2) that "the citizens of each state shall be entitled to all privileges and immunities of citizens in the several states." Congress provided that an alien might "be admitted to become a citizen of the United States" by declaring on oath before certain courts of the United States, "or a court of record of any of the states having common-law jurisdiction, and a seal and clerk, two years at least prior to his admission," that it was bona fide his intention to become a citizen of the United States, and to renounce other allegiance, and making to appear to the satisfaction of the court that he had resided within the United States five years, and during that time had behaved as a man of good moral character, attached to the principles of the constitution of the United States, and well disposed to the good order and happiness of the same; and that an alien who had resided in the United States 3 years next preceding arriving at 21 might be admitted without having made the previous declaration of intentions. Rev. St. §§ 2165, 2167. Thus, universal citizenship of the United States and of the several states, and a mode of admission to it, were established, which were confirmed by the fourteenth amendment to the constitution, which provides (section 1) that "all persons born or naturalized in the United States, and subject to the jurisdiction thereof, are citizens of the United States, and of the state wherein they reside." The defendant had not, according to the allegations of the bill, in fact become entitled to admission to this citizenship when he was admitted, for he had neither resided in the United States three years next before becoming of age, nor made the preliminary declaration of intention to become a citizen of which such residence might take the place; and his application probably would not have been granted without the representation, alleged to be false, of that residence. But, whatever the fact was, the administration of the oaths and issuing of the certificate showed the satisfaction of the court as to the requirements, constituting a judgment of admission to citizenship, with the force of such a judgment upon the status of the applicant.

In Campbell v. Gordon, 6 Cranch, 176, Washington, J., said:

"But if the oath be administered, and nothing appears to the contrary, it must be presumed that the court before whom the oath was taken was satisfied as to the character of the applicant. The oath, when taken, confers upon him the rights of a citizen, and amounts to a judgment of the court for his admission to those rights."

In Spratt v. Spratt, 4 Pet. 392, Chief Justice Marshall said:

"The various acts upon the subject submit the decision on the right of aliens to admission as citizens to courts of record. They are to receive testimony, to

compare it with the law, and to judge on both law and fact. This judgment is entered on record as the judgment of the court. It seems to us, if it be in legal form, to close all inquiry, and, like every other judgment, to be complete evidence of its own validity."

And in Ex parte Cregg, 2 Curt. 98, Fed. Cas. No. 3,380, Mr. Justice Curtis, upon a question as to the court, said:

"The importance and value of this privilege of citizenship, which is conclusively and finally bestowed by the act of the court having jurisdiction, 'should prevent allowing any requirement of an act of congress from having its full weight,' in an application for this great right, so as to make an absolute and unimpeachable grant of it."

The conclusive effect everywhere of such judgments affecting the status of persons is alluded to in Hilton v. Guyot, 159 U. S. 113, at page 167, 16 Sup. Ct. 139, at page 145. Thayer, J., in U. S. v. Norsch, 42 Fed. 417 (much relied upon in behalf of the plaintiff), seems to treat the liability of a judgment of naturalization to be set aside for fraud like a patent as conceded, and to have considered only the power of courts of the United States to set aside such judgments of state courts, and to intimate that the relief would be accomplished by setting aside the certificate, or by injunction against exercising the right. Such would seem to be the only modes of relief, if any could be granted, for technically no court not authorized by law to review a judgment could directly set it aside. Barrow v. Hunton, 99 U. S. 80. And a court of equity can affect a judgment only by decree to prevent carrying it out or enforcing it. 2 Story, Eq. § 885. The surrender of the certificate, which is only evidence of the judgment, would not affect the citizenship established by the judgment; and an injunction which could only run against further exercise of the rights of citizenship would not affect past acts.

The defendant became a citizen of the state of New York, as well as of the United States. Other citizens became entitled to vote for him for such offices as citizens could hold, as well as he became entitled to vote, hold office, hold lands, or do what else citizens can do. Neither the state, nor any citizen of New York or of the United States, is a party to this suit; nor do they hold their right to vote for him, or to have him hold office, under him, and no decree against him here could affect their right. An attempt to carry out such a decree, especially after the right has been enjoyed 29 years, would produce great confusion and mischief. Chief Justice Marshall, in Spratt v. Spratt, before cited, stated that the inconvenience which might arise from holding the judgment conclusive had been pressed upon the court; "but the inconvenience might be still greater if the opposite opinion be established."

Upon these authorities and considerations, the naturalization in the superior court of the city of New York must be held conclusive; and no ground for relief appears, if such as is prayed could be had in this form. Demurrer sustained.