UNITED STATES v. AAKERVIK.

(District Court, D. Oregon. June 20, 1910.)

No. 5,085.

1. ALIENS (§ 62*)—NATURALIZATION—RESIDENCE.
    While one's residence under Rev. St. § 2170 (U. S. Comp. St. 1901, p. 1333), which required an applicant for citizenship to have resided in the United States for five years next preceding his admission, depends largely on his intention, such intention is to be gathered from his acts rather than from his declarations.

    [Ed. Note.—For other cases, see Aliens, Cent. Dig. § 125; Dec. Dig. § 62.*]

2. ALIENS (§ 62*)—NATURALIZATION—RESIDENCE.
    An alien who returned to and remained in his native country for more than four years, where his family always lived, he resuming his regular occupation there, cannot claim residence in the United States during that period under Rev. St. § 2170 (U. S. Comp. St. 1901, p. 1333), which required an applicant for citizenship to have resided in the United States for five years.

    [Ed. Note.—For other cases, see Aliens, Cent. Dig. § 125; Dec. Dig. § 62.*]

3. ALIENS (§ 71½,* New, Vol. 7, Key No. Series)—NATURALIZATION—VACATION OF CERTIFICATES.
    A certificate of citizenship may be set aside for fraud or illegality in its procurement, comprehending false testimony under which the certificate was procured as well as error in rendering judgment on a given state of facts.

4. ALIENS (§ 67*)—JURISDICTION—NATURALIZATION.
    For the purpose of the naturalization acts 'all courts having jurisdiction under the acts are federal courts, and a federal court can vacate a judgment of a state court or vice versa.

    [Ed. Note.—For other cases, see Aliens, Cent. Dig. §§ 131–137; Dec. Dig. § 67.*]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

5. ALIENS· (§ 70*)—NATURALIZATION—NATURE OF ·ADJUDICATION.

An order admitting to citizenship, being a judgment with the ordinary attributes of a court of· record importing verity, is as conclusive as such judgments.

[Ed. Note.—For other cases, see Aliens, Cent. Dig. §§ 154–160; Dec. Dig. § 70.*]

6. JUDGMENT (§ 342*)—VACATION—JURISDICTION.

Courts generally have jurisdiction to reverse their own judgments and decrees during the term at which they are rendered, for error of law, fraud, mistake, or ,any injurious irregularity, but it can be done after the term only under statute or under proceedings taken in time.

[Ed. Note.—For other cases, see Judgment, Cent. Dig. §§ 668–671; Dec. Dig. § 342.*]

7. JUDGMENT (§ 538*)—TIME OF TAKING EFFECT.

A judgment or decree becomes a finality as to the parties and their privies on failure to initiate proceedings for review within the term fixed by law.

[Ed. Note.—For other cases, see Judgment, Cent. Dig... § 985; Dec. Dig. § 538.*]

8. JUDGMENT (§ 443*)—VACATION BY INDEPENDENT SUIT.

Suit lies to vacate a judgment or decree where the unsuccessful party has been prevented from exhibiting ,his case fully, by his adversary's fraud or deception, as by keeping him away from court, or making a false promise to compromise, or where an attorney fraudulently assumes to represent the unsuccessful party and connives at his defeat or where his°attorney sells out to the adversary.

[Ed. Note.—For other cases, see Judgment, Cent. Dig. §§ 785, 836,· 838; Dec. Dig. § 443.*]

9. ALIENS (§ 71½,* New, vol. 7, Key No. Series)—NATURALIZATION—VACATION OF ORDERS.

The time for vacating an order admitting to citizenship, for an error of law of the court having expired before Naturalization Act June 29, 1906, c. 3592, § 15, 34 Stat. 601 (U. S. Comp. St. Supp. 1909, p. 486), suit does not now lie ·to vacate it, though that act ·authorizes suits to vacate· certificates of citizenship.

Suit by the United States of America against Helmer Aakervik: Dismissed.

This is a suit instituted under the act of Congress of June 29, 1906 (Act June 29, 1906, c. 3592, § 15, 34 Stat. 601 [U. S. Comp. St. Supp. 1909, p. 486]), to cancel the certificate of citizenship issued to the respondent by a state court March 10, 1902. The respondent was. a subject of Norway. He came to the United States on the steamer Germanic in March, 1888, landing at the city of New York, thence immediately to the state of Oregon. He left his family, consisting of a wife and minor children, in Norway, but remained continuously in Oregon from the time of his arrival until the fall of 1893. ,In the summer of that year he made declaration of his intention to become a citizen of the United States. In the fall, however, he returned to Norway. In May, 1898, he came back to the United States, but did not then bring his family, nor until in the year 1901. On March 10, 1902, he received his naturalization papers. The judgment of the court proceeded upon the hearing of witnesses produced by him. It is alleged by the government that, during all the times mentioned in the petition, the respondent was a· married man and maintained a home in Tarven, Norway, where his wife and children resided continuously up to and including the time when he brought them to the United States, where he has since kept and maintained them, he residing with them, and that his certificate was illegally granted and issued to him, in violation of section 2165

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date,· & Rep'r Indexes

of the Revised Statutes of the United States (U. S. Comp. St. 1901, p. 1329).

The respondent, by answer to the petition, wherein he prays for the same relief as if he had demurred thereto, assigns as cause of demurrer that the facts set forth in the petition do not entitle the United States to any relief, and further shows that the purpose of his coming to the United States in 1888 was to make a permanent home therein; that he left his family in Norway, being unable financially to bring them with him at that time; that in the fall of 1893 he returned to Norway by reason of the sickness of his wife, intending to come back to the United States, and ultimately to bring his family, when financially able to do so; that after the recovery of his wife, he learned that by reason of the financial depression in the year 1893, opportunities for work were not favorable and decided to remain temporarily in Norway, which he did, carrying on his occupation of carpentry, and occasionally sailing on some of the coastwise vessels plying along the coast of Norway; that when he returned to the United States, he did not immediately bring his family, being financially unable to do so; that he applied for his naturalization in good faith, and never supposed there was anything wrong with his citizenship papers until one of his sons applied for a license as engineer, and was refused it upon the claim that such papers were defective. By stipulation, the hearing of the cause was had upon the petition and answer.

John McCourt, U. S. Atty., and Andrew J. Balliet, Sp. Asst. U. S. Atty.

Snow & McCamant, for respondent.

WOLVERTON, District Judge (after stating the facts as above). The vital question propounded is whether the respondent's certificate of citizenship can be revoked and canceled by a proceeding of this nature on the ground that it was illegally issued. The act of Congress of June 29, 1906, authorizes the bringing of a suit on the part of the United States District Attorney, in any court having jurisdiction to naturalize aliens, in the judicial district in which the naturalized citizen may reside, for the purpose of setting aside and canceling the certificate of citizenship on the ground of fraud, or because illegally procured. The petition here does not contain any pertinent allegations of fraud practiced in procuring the certificate in question, so that further inquiry on that branch of relief may be dismissed. There remains but the one inquiry, whether the certificate can be set aside because illegally issued. The question is one of geat moment, for it involves the rights, privileges, and immunities of citizenship. A citizen by adoption is entitled, under the federal Constitution, to all the privileges and immunities of one native born, save the right to hold the office of President of the United States—the highest office within the gift of the people. He is further safeguarded by the declaration of the fourteenth amendment that he is a citizen of the United States and of the state wherein he resides. So that a person's citizenship in this country is a status that affects him vitally.

In the view I take of this controversy, it may be assumed that the respondent duly filed his declaration of intention, and we need not go behind the time when he departed from the United States in the fall of 1893, and returned to Norway. It is contended by counsel for respondent that, when respondent left for Norway, he left with the intention of returning to the United States, and that, adhering to such

intention, he changed neither his residence nor his domicile while sojourning abroad; that the true status of respondent while abroad was that of a resident here, and that such a status is within the intendment of section 2170 of the Revised Statutes (U. S. Comp. St. 1901, p. 1333) which was the law at the time the respondent was admitted to citizenship. The section reads as follows:

"No alien shall be admitted to become a citizen who has not for the continued term of five years next preceding his admission resided within the United States."

The section as it stood before revised, being the twelfth section of the act of March 3, 1813, c. 42, 2 Stat. 811, read as follows:

"No person who shall arrive in the United States, from and after the time when this act shall take effect, shall be admitted to become a citizen of the United States, who shall not, for the continued term of five years next preceding his admission as aforesaid, have resided within the United States without being at any time during the said five years out of the territory of the United States."

This latter statute has received construction at the hands of Betts, District Judge, Anonymous, Fed. Cas. No. 465, to the effect that by its terms it inhibits the grant of naturalization when the applicant has been during any part of the five years out of the territory of the United States. Previously the same learned judge, in passing upon a prior statute, that of Act April 14, 1802, c. 28, 2 Stat. 153, which required five years' residence in the United States, held that residence meant domicile, and that said act did not require that the alien remain constantly in this country for five years. In re An Alien, Fed. Cas. No. 201a. Thus much for the history and interpretation of the present statute. The sense of the present statute is the same as before its revision, except that the words "without being at any time during the said five years out of the territory of the United States" are eliminated. The elimination by the revision would seem to indicate that it was the purpose of Congress not to require that the petitioner remain continuously within the United States. But the law does require a continuous residence, and that for a period of five years, next preceding admission to citizenship.

From the facts stated, both in the petition herein and the answer, it appears that the respondent was, from the fall of 1893 to the spring of 1898, a period of four and one-half years, in Norway with his family, working at his trade and sailing on coastwise vessels, presumably those of Norway. It would take nearly one year of this period to make up five years of residence in this country next preceding his admission. While it may be true that residence depends largely upon intention, yet the intention is not always what the party says about it, but is to be gathered from his acts and demeanor, and the facts and circumstances attending his abiding place, wherever it may be. All the conditions disclosed by this record show unmistakably a residence in Norway during the four years and a half the respondent was absent from this country. He was not only living there, but his family was there with him, and he was pursuing his usual occupation. Against this evidence as to his place of residence is the dec-

laration that he claimed his residence in the United States all this time. If he acquired a residence in this country by living here absent from his family in the first instance, he surely acquired a new residence in Norway by returning to his family, and living with and supporting them there. The time spent there in that way is too long for him to say, as against that, that his residence was not there. It seems to me there can be no question as to this. A person cannot have a residence in two countries at one and the same time for the purpose of citizenship. The facts being admitted, as they are, the question becomes one of law merely as to whether the respondent was entitled to admission to citizenship. That question was evidently determined in his favor. In this there was error, and his certificate was illegally granted.

It is further contended, however, that it is not competent under the equity practice to impeach or set aside a judgment for intrinsic fraud in the procurement thereof, or for error of law committed in its rendition. But, whatever may be the rule under the general equity procedure and practice, the present statute has enlarged the remedy as it pertains to the granting of naturalization papers, and it would seem that the proper court is empowered to set aside the certificate of citizenship on the ground of fraud or illegality in its procurement. This would comprehend false swearing by means of which the certificate was procured to be issued, as well as error of the court in rendering judgment upon a given state of facts. United States v. Mansour (D. C.) 170 Fed. 671; United States v. Simon (C. C.) 170 Fed. 680.

But the more serious question urged is that the act of June 29, 1906, is unconstitutional in so far as it is made to apply to all certificates of citizenship which may have been issued prior to the passage of the act. This contention is based upon the proposition that the issuance of the certificate constitutes a judgment to all intents and purposes, and that Congress is without power to authorize the vacation or annulment of judgments retrospectively on the ground that such judgments were procured through false swearing, or that the court granted the same through error of law, and therefore illegally. The suggestion that it is not competent for a federal court to vacate the judgment of a state court and a state court that of a federal court is not persuasive, because the authority of state courts to naturalize aliens, as well as that of the federal courts, emanates from Congress. All are, for the purposes of the naturalization acts, federal courts, and one set of courts is not foreign to the other. So that relief in the particular matter may as readily be adjudged by a federal court against the judgment of a state court, and vice versa, as by a federal court against the judgment of a federal court or a state court against that of a state court.

As to whether the act of the court in admitting the alien to citizenship is a judgment, it has been held that the oath, when taken, confers upon the applicant the rights of a citizen, and amounts to a judgment of the court for his admission to those rights, and implies that all prerequisites have been complied with. Campbell v. Gordon, 6 Cranch, 176, 182, 3 L. Ed. 190. In this case the question as to the effect of the admission to citizenship came up collaterally. A like ruling was had in a similar case, the question arising as there. Stark v. Chesapeake

Insurance Co., 7 Cranch, 420, 3 L. Ed. 391. So again, in Spratt v. Spratt, 4 Pet. 393, 408, 7 L. Ed. 897, the question came up collaterally in the Supreme Court, as in these cases, and Chief Justice Marshall, in rendering the opinion of the court, says:

"The various acts upon the subject submit the decision on the right of aliens to admission as citizens to courts of record. They are to receive testimony to compare it with the law, and to judge on both law and fact. This judgment is entered on record as the judgment of the court. It seems to us, if it be in legal form, to close all inquiry; and, like every other judgment, to be complete evidence of its own validity. The inconvenience which might arise from this principle has been pressed upon the court. But the inconvenience might be still greater, if the opposite opinion be established. It might be productive of great mischief, if, after the acquisition of property on the faith of his certificate, an individual might be exposed to the disabilities of an alien, on account of an error in the court, not apparent on the record of his admission."

To the same effect is Charles Green's Son v. Salas (C. C.) 31 Fed. 106. In other cases, namely, In re An Alien, 7 Hill (N. Y.) 137, cited in last case above, and In re Bodek (C. C.) 63 Fed. 813, it is said that the proceedings for admission to citizenship are "strictly judicial." The latter case was upon a petition for admission to citizenship. The question is not determined in the case of United States v. Norsch (C. C.) 42 Fed. 417, but it was taken as conceded that a decree of naturalization does not stand upon any different footing from judgments and decrees rendered in other judicial proceedings. It was upon this basis that the adjudication of the court in that case proceeded. In United States v. Gleason (C. C.) 78 Fed. 396, which was determined upon a bill to set aside and vacate a certificate of citizenship, it was held that the administration of the oath required by the naturalization act and the issuing of the certificate constitutes a judgment which is conclusive as to the necessary facts and the status of the petitioner. This case was affirmed in the Court of Appeals (90 Fed. 778, 33 C. C. A. 272), the court holding that a suit would not lie to vacate a judgment on the ground that it was procured by means of the perjured testimony of the party benefited. So in the case In re McCoppin, Fed. Cas. No. 8,713, Mr. Justice Field treats and speaks of the issuance of a certificate of naturalization as a judgment. This was a proceeding instituted for a readmission of the applicant to citizenship on account of irregularities supposed to exist in the certificate. The state courts also have regarded the orders of the courts admitting aliens to citizenship as judgments possessing the usual force and characteristics of other judgments of courts of record. In re Tinn, 148 Cal. 773, 84 Pac. 152, 113 Am. St. Rep. 354; People v. McGowan, 77 Ill. 644, 20 Am. Rep. 254. In the first of these cases it is said:

"It is settled by the authorities that an order admitting an alien to citizenship is a judgment of the same dignity as any other judgment of a court having jurisdiction."

Mr. Black, in his work on Judgments, § 804, indicates a like view, drawing his inferences from the adjudicated cases.

Being a judgment with the ordinary characteristics or attributes of a judgment of a court of record importing verity, it is not more vulnerable to attacks upon its validity and effectiveness as a final and

conclusive adjudication than any other judgment of a court of record having competent jurisdiction in the premises. Following this is the contention that a judgment of the kind, under the long-established and well-settled practice of the courts of equity, cannot be impeached by direct proceeding for fraud, consisting of perjury or false swearing in rendering testimony, whereby the court was induced to give the judgment, nor for errors of the court in its deduction from the testimony adduced from which the judgment proceeded. Courts generally, excepting some perhaps of the more limited, have jurisdiction to reverse their own judgments and decrees during the term at which they are rendered. In pursuance of such authority they may, for error of law, or for fraud, mistake, or any irregularity that might seem to them to have affected either of the parties to the controversy injuriously, set aside their judgments and decrees, and award a new trial or rehearing, and thus give opportunity for righting whatever wrong may have been engendered. After the term has ended, however, the authority of the courts to this purpose ceases, unless extended by statute, or by motion, or some appropriate procedure taken within the time. This rule applies as well to equity procedure as to procedure at law. Other means of relief for the errors of the court are usually afforded by writ of error or appeal, and in equity a bill of review will lie, within rules prescribed by law, for evidence discovered after the decree has become final. All such procedings are taken and prosecuted in the same suit or action, and not by separate controversy. When, therefore, the term is at an end without the appropriate initiation of an available proceeding to revise or set aside the court's final judgment or decree, and no appeal or other means of review is prosecuted within the time afforded by authoritative regulation, such judgment or decree becomes an absolute finality, forever binding upon the parties and their privies, utterly without power of change, revision, revocation, or relief within the cause or proceeding in which it is rendered. There are many causes, however, for which a new and independent suit will lie to set aside or annul a judgment or decree. Some of them may be mentioned. Thus, where the unsuccessful party has been prevented from exhibiting his case fully, by fraud or deception practiced on him by his opponent, as by keeping him away from court, or a false promise of a compromise, or where the defendant never had knowledge of the suit, being kept in ignorance by act of the plaintiff, or where an attorney fraudulently or without authority assumes to represent a party and connives at his defeat, or where the attorney regularly employed sells out his client's interest to the other side—these and similar cases which go to indicate that there has never been any real contest in the trial or hearing of the case, afford grounds for impeachment by suit instituted directly for that purpose.

"On the other hand," says Mr. Justice Miller, in United States v. Throckmorton, 98 U. S. 61, 66 (25 L. Ed. 93), "the doctrine is equally well settled that the court will not set aside a judgment because it was founded on a fraudulent instrument, or perjured evidence, or for any matter which was actually presented and considered in the judgment assailed."

And, further, after a discussion of the authorities, he concludes:

"We think these decisions establish the doctrine on which we decide the present case, namely, that the acts for which a court of equity will on account of fraud set aside or annul a judgment or decree, between the same parties, rendered by a court of competent jurisdiction, have relation to frauds, extrinsic or collateral, to the matter tried by the first court, and not to a fraud in the matter on which the decree was rendered. That the mischief of retrying every case in which the judgment or decree rendered on false testimony, given by perjured witnesses, or on contracts or documents whose genuineness or validity was in issue, and which are afterwards ascertained to be forged or fraudulent, would be greater, by reason of the endless nature of the strife, than any compensation arising from doing justice in individual cases."

In a later case, Vance v. Burbank, 101 U. S. 514, 519, 25 L. Ed. 929, which was instituted to set aside a patent to a townsite entry, the court, speaking through Mr. Chief Justice Waite, says:

"It has also been settled that the fraud in respect to which relief will be granted in this class of cases must be such as has been practiced on the unsuccessful party, and prevented him from exhibiting his case fully to the department, so that it may properly be said there has never been a decision in a real contest about the subject-matter of inquiry. False testimony or forged documents even are not enough, if the disputed matter has actually been presented to or considered by the appropriate tribunal."

And such has become the settled doctrine of the Supreme Court. Steel v. Smelting Co., 106 U. S. 447, 453, 1 Sup. Ct. 389, 27 L. Ed. 226; Moffat v. United States, 112 U. S. 24, 32, 5 Sup. Ct. 10, 28 L. Ed. 623; United States v. Minor, 114 U. S. 233, 242, 5 Sup. Ct. 836, 29 L. Ed. 110; Hilton v. Guyot, 159 U. S. 113, 207, 16 Sup. Ct. 139, 40 L. Ed. 95; United States v. Beebe, 180 U. S. 343, 21 Sup. Ct. 371, 45 L. Ed. 563.

It has been sometimes questioned whether the case of Marshall v. Holmes, 141 U. S. 589, 12 Sup. Ct. 62, 35 L. Ed. 870, is not in conflict with the doctrine of the foregoing cases, but it seems latterly not to be so regarded. Nelson v. Meehan, 155 Fed. 1, 83 C. C. A. 597, 12 L. R. A. (N. S.) 374. The doctrine has been applied in cases to annul citizenship papers. United States v. Norsch, supra, was a case of this kind, and while holding that the court had jurisdiction to cancel the certificate on account of fraud, nevertheless the bill was dismissed, because, as the court says:

"It will not do, in a bill of this character, to show merely that the judgment assailed is erroneous, and ought not to have been entered; neither will it suffice to charge generally that it was fraudulently procured, or that the court was imposed upon."

And further on in the opinion the court concludes as follows:

"It (the bill) shows, indeed, that the decree was and is erroneous, and that it was likewise irregular, in that there was no such judicial inquiry into the case as the act of Congress contemplates shall be had in such cases; but these are defects in the decree which can neither be remedied by a bill of this character, nor by this court."

So in the case of United States v. Gleason, supra, the lower court, after determining that the issuance of a certificate of citizenship was tantamount to a judgment, held directly that such certificate cannot be set aside upon the ground that the facts were falsely represented to

the court. On the appeal to the Court of Appeals, the majority of the court, while not deciding directly that the issuance of the certificate was a judgment, did specifically determine that the certificate could not be annulled in equity on the ground that it was procured by means of the perjured testimony of the party whom it benefited.

This brings us to the last contention, namely, that the act of Congress, so far as it authorizes the impeachment of the court's judgment for fraud consisting of perjury in obtaining the judgment, or for error in the court in determining the cause upon the evidence before it, is unconstitutional as trenching upon the legitimate domain of the judiciary, and as unseating settled rights of individuals retrospectively. A judgment once rendered, if concerning property rights, settles them as between the litigants, or if touching the status of either property or the person, determines that, the court possessing proper jurisdiction, and is and ought to be the end of litigation and the law, unless set aside or revised by some authoritative method known also to the law. Now, it is insisted that, under the long-established and well-settled court practice, this judgment, declaring the respondent to be a citizen of the United States, had been fixed beyond the power of the court to change, or to modify or set it aside, and that the act of Congress authorizing the court again to review it is, in purpose and effect, authorizing a retrial, and thus to vacate the judgment, a thing that the court could not do previously. The Supreme Court has determined that an act of Congress cannot annul a judgment of the Supreme Court, or impair the rights determined thereby, as respects adjudications upon the private rights of parties, and applied the principle as it pertained to a matter of costs, while it was held that the principal controversy did not come within the rule. State of Pennsylvania v. Wheeling and Belmont Bridge Co., 18 How. 421, 15 L. Ed. 435. And in United States v. Klein, 13 Wall. 128, 20 L. Ed. 519, the Supreme Court declared that Congress was unauthorized to deny to pardons granted by the President the effect which the court had previously adjudged them to have. The case was pending on appeal from the Court of Claims, and the effect of the legislation was to require the court to dismiss the appeal and proceed no further in the case, and this although the Court of Claims had declared for the claimant upon the very evidence which Congress declared should have a certain contrary effect when brought to the attention of the appellate jurisdiction. Further than this, a previous case (United States v. Padelford, 9 Wall. 531, 19 L. Ed. 788), of like import, had been appealed to the Supreme Court, wherein the Court of Claims was affirmed, and thus the effect of the President's pardons had been judicially determined. After stating the facts of the case more fully than here, the court says:

"It is evident from this statement that the denial of jurisdiction to this court, as well as to the Court of Claims, is founded solely on the application of a rule of decision, in causes pending, prescribed by Congress. The court has jurisdiction of the cause to a given point; but when it ascertains that a certain state of things exists, its jurisdiction is to cease, and it is required to dismiss the cause for want of jurisdiction."

The great weight of authority elsewhere seems to determine the matter in accord with the contention. Mr. Black states the doctrine sought to be invoked thus:

"The power to open or vacate judgments is essentially judicial. Therefore, on the great constitutional principle of the separation of the powers and functions of the three departments of government, it cannot be exercised by the Legislature. While a statute may indeed declare what judgment shall in future be subject to be vacated, or when or how or for what causes, it cannot apply retrospectively to judgment already rendered and which had become final and unalterable by the court before its passage. Such an act would be unconstitutional and void on two grounds: First, because it would unlawfully impair the fixed and vested rights of the successful litigant; and, second, because it would be an unwarranted invasion of the province of the judicial department." 1 Black on Judgments, § 298.

Mr. Cooley is as explicit. He says:

"It is always competent to change an existing law by a declaratory statute; and where the statute is only to operate upon future cases, it is no objection to its validity that it assumes the law to have been in the past what it is now declared that it shall be in the future. But the legislative action cannot be made to retroact upon past controversies, and to reverse decisions which the courts, in the exercise of their undoubted authority, have made; for this would not only be the exercise of judicial power, but it would be its exercise in the most objectionable and offensive form, since the Legislature would in effect sit as a court of review to which parties might appeal when dissatisfied with the rulings of the courts. Cooley's Constitutional Limitations (6th Ed.) p. 111.

In De Chastellux v. Fairchild, 15 Pa. 18, 20, 53 Am. Dec. 570, it is said:

"If anything is self-evident in the structure of our government, it is that the Legislature has no power to order a new trial, or to direct the court to order it either before or after judgment. The power to order new trials is judicial; but the power of the Legislature is not judicial. It is limited to the making of laws; not to the exposition or execution of them."

So again, in State v. New York, N. H. & H. R. Co., 71 Conn. 43, 49, 40 Atl. 925, 928, the court says:

"The judgment is the final and supreme act of judicial power. The Legislature cannot overturn judgments, any more than the judiciary can make laws. A judgment is based upon established rules and principles administered by the judiciary."

In Roche v. Waters, 72 Md. 264, 19 Atl. 535, 7 L. R. A. 533, it is distinctly held that an act, so far as it authorizes a court to change the effect of decrees which before its passage had become final, is an exercise of judicial power by the Legislature, and is unconstitutional. This decision was given on a rehearing, and the question was exhaustively considered.

And again the court says in Re Handley's Estate, 15 Utah, 212, 220, 49 Pac. 829, 831 (62 Am. St. Rep. 926):

"The court, having tried the case, construed the law in force at the time; and, having applied it to the facts, and entered a final decree, the Legislature could not afterwards, by a declaratory or explanatory act as to that case, give to the law a different construction, requiring a different decree, and invent a new remedy or change the old one, and require the court to retry the case and enter a new decree according to its new construction, and new and changed remedy."

So in Atkinson v. Dunlap, 50 Me. 111, 116, the court says:

"That the Legislature has constitutional jurisdiction over remedies is a proposition not to be controverted; but, after all existing remedies have been exhausted and rights have become permanently vested, all further interference is prohibited."

So, also, it is said in Martin v. South Salem Land Co., 94 Va. 28, 36, 26 S. E. 591, 592:

"The Legislature within certain limitations may alter and control remedies by which litigants assert their rights in the courts, but when the litigation has proceeded to judgment or decree upon the merits of the controversy, it has passed beyond its power."

See, also, to a like purpose, Sparhawk v. Sparhawk, 116 Mass. 315; Griffin's Ex'r v. Cunningham, 20 Grat. (Va.) 31; Davis and another v. Village of Menasha and others, 21 Wis. 497; State v. Flint, 61 Minn. 539, 63 N. W. 1113.

Now, to come to the present case. Prior to the recent act of Congress, the respondent's status as a naturalized citizen of the United States had, under the practice and rulings of the courts, become unalterably fixed and settled. The time had wholly elapsed in which the government could have applied in the same case for a rehearing or a new trial, and there was left no remedy by appeal so that the order admitting him to citizenship could be reviewed in that way. According to the adjudged cases, there was no equitable remedy left, the order being tantamount to a judgment, by which it might be vacated or annulled for fraud practiced upon the court by perjury or false swearing in procuring the order, nor for a revision of the court's action for error in passing upon the effect of the evidence. So that, but for the act in question, the government was wholly without a remedy for questioning the validity of respondent's citizenship. His status had become finally and effectually settled. It is only by prescribing a new and additional remedy that the government is enabled at all to attack this status, and this after the status had become judicially established. It seems clear that the effect of the legislation is to grant a new trial in a judicial proceeding which had otherwise become final and effective. That the result is destructive of a settled and most important and valuable right and privilege cannot be gainsaid. The respondent, it must be presumed, is not chargeable with any fraud in false swearing. The facts were, no doubt, stated to the court which admitted him, as they are here, but the court was in error in concluding that the facts stated warranted his admission. This was an error of judgment that could be corrected only under the practice and rules of law then authoritative, through a rehearing, new trial, or an appeal. But, the time having elapsed for resort to these remedies, the judgment became fixed and irrevocable. I hold, therefore, that the present suit does not lie to correct that error, and it will be dismissed.