**UNITED STATES ex rel. VOLPE, v. JORDAN.**

**No. 9171.**

Circuit Court of Appeals, Seventh Circuit.

Feb. 12, 1947.

Rehearing Denied May 23, 1947.

SPARKS, Circuit Judge, dissenting.

———◆———

Guy C. Crapple, of Chicago, Ill. for appellants.

J. Albert Woll, U. S. Atty., and John Peter Lulinski, Asst. U. S. Atty., both of Chicago, Ill., for appellee.

Before SPARKS and MAJOR, Circuit Judges, and HOLLY, District Judge.

MAJOR, Circuit Judge.

Upon a further study of this case in connection with the petition for rehearing, we are of the view that our former opinion should be vacated and set aside. The appellants, Anthony Volpe (hereinafter referred to as the petitioner) and Sarah Johnson Volpe, are husband and wife. An amended petition for writ of habeas corpus was filed by the wife on behalf of the husband. The court below sustained appellee's (respondent's) plea in bar to such amended petition, and this appeal comes from the judgment of the court sustaining such plea.

It was sought by the petition to obtain the release of Volpe from the custody of respondent (the District Director of Immigration), pending deportation proceedings. There is no occasion to relate the facts upon which rests the order of deportation long ago entered. They may be found in a proceeding by Volpe, decided adversely to him by this court in United States ex rel. Volpe v. Smith, etc., 7 cir., 62 F.2d 808, and affirmed by the Supreme Court in United States ex rel. Volpe v. Smith, 289 U.S. 422, 53 S.Ct. 665, 77 L.Ed. 1298.

The amended petition alleges that Volpe is being held in the custody of respondent on a warrant to deport him to Italy as an alien. It recites that Volpe entered the United States March 31, 1906, with his parents, that he subsequently married and has a family consisting of a wife and three children. It alleges that on the 31st day of January, 1916, he filed his declaration of intention to become a citizen of the United States, that on July 18, 1918 he filed his petition for naturalization in the Superior Court of Cook County, Illinois, "that on the 27th day of March 1920, by Order of the Superior Court of Cook County, Illinois, the relator was admitted to citizenship in the United States of America and certificate of such citizenship No. 1345264 was issued to him by the Clerk of the Superior Court of Cook County, Illinois, pursuant to the Order of said Court. That on the aforesaid March 27, 1920, relator subscribed and swore to the oath of allegiance to the United States of America, which said oath was filed of record in the Superior Court of Cook County, Illinois, in naturalization proceeding No. 30179, that he renounced allegiance to the King of Italy, in consequence of which, from the 27th day of March 1920 he no longer was and is not now a subject of the King of Italy nor a citizen of the State or Government or Country of Italy." The petition continues with allegations about which the instant controversy revolves, as follows: "That on April 3, 1920, the Superior Court of Cook County, Illinois, vacated and set aside its order of March 27, 1920, by which the relator became a citizen of the United States. That said Order recited it was being done on the motion of the United States and did not recite or find that relator was given any notice of said motion. That said motion was not in writing and never was filed of record in the Superior Court of Cook County, Illinois. That relator did not receive any notice of said motion and no notice to relator or anyone else of said motion was ever filed of record in the Superior Court of Cook County, Illinois. That on April 3, 1920, the Superior Court of Cook County had no jurisdiction over the relator to enter any Order against him in proceeding No. 30179 or in any other proceeding, and that the Order of the Superior Court of Cook County, Illinois, entered on April 3, 1920, vacating and setting aside its judgment naturalizing the relator on March 27, 1920, was null and void and of no effect whatsoever."

As stated, respondent filed a plea entitled a "Plea in Bar" which alleged, so far as here material, "All of the questions involved in the alienage of Anthony Volpe and all of the questions involving the deportability of the said Anthony Volpe have heretofore been adversely determined to the said Anthony Volpe by the Supreme Court of the United States; United States ex rel. Anthony Volpe v. S. D. Smith, 289 U.S. 422, [53 S.Ct. 665, 77 L.Ed. 1298,] and by the Circuit Court of Appeals for the Seventh Circuit, United States ex rel. Anthony Volpe v. S. D. Smith, 62 F.2d 808, 809." There was also filed in connection with and in support of this plea a transcript of the record, together with the briefs and argument filed in the case heretofore be-

fore this court. In further support of said plea, there was filed the mandate of the Supreme Court of the United States, which followed its decision above referred to.

▮ Thus petitioner by the allegations of his petition presented the vital issue as to the validity of the order of the Superior Court of Cook County, entered April 3, 1920, which purported to vacate and set aside the same court's order of March 27, 1920, by which petitioner was decreed to be a citizen of the United States. In considering such issue, we must accept the facts as alleged and determine whether or not they are sufficient to require an answer. If the order of April 3 was valid, it follows that petitioner was effectually deprived of the citizenship status awarded him by the decree of March 27. On the other hand, if the order of April 3 was entered without authority, it was void and it must follow that petitioner was not deprived of the right conferred upon him by the decree of March 27. In other words, he was made a citizen by the court's decree of March 27 and remains a citizen unless that right has been taken from him in a manner authorized by law. In such case, he would not be subject to deportation and all the proceedings subsequently had are of no consequence.

▮▮ We think respondent's plea in bar may be disposed of in short order. It is plainly apparent from a reading of the opinion of this court (7 cir., 62 F.2d 808), as well as that of the Supreme Court (289 U.S. 422, 53 S.Ct. 665, 77 L.Ed. 1298), that the question now presented was not decided. The unmistakable fact is that this court is well as the Supreme Court assumed for the purpose of deciding the validity of the deportation proceedings that petitioner was an alien and not a citizen. More than that, the former case was in habeas corpus, as is the instant one, and the doctrine of res judicata is not applicable. Wong Doo v. United States, 265 U.S. 239, 44 S.Ct. 524, 68 L.Ed. 999; Salinger v. Loisel, 265 U.S. 224, 44 S.Ct. 519, 68 L.Ed. 989; Waley v. Johnston, 316 U.S. 101, 62 S.Ct. 964, 86 L.Ed. 1302. We therefore are of the view that respondent's plea in bar was improperly sustained.

At this point it is pertinent to note that petitioner both in his petition and in his brief filed in this court assails the validity of the Superior Court order of April 3, 1920, upon the ground that it was contrary to the rules of the Superior Court, which provide in effect that no motion will be heard or order made in any case without one day's written notice to the opposite party. Respondent before this court does not contend that this rule was complied with or that petitioner had any notice prior to the court's order of April 3, 1920, but argues that petitioner by his subsequent conduct recognized the order as valid and binding. We also note that petitioner on August 24, 1945 filed in the Superior Court of Cook County a petition to set aside and expunge from the record the order entered April 3, 1920, vacating the court's previous order admitting him to citizenship. This petition was denied on the ground that the court was without jurisdiction. On appeal, such dismissal was affirmed by the Appellate Court of Illinois, 328 Ill.App. 311, 66 N.E.2d 146 (abstract), and leave to appeal was denied by the Supreme Court of Illinois on September 23, 1946.

Respondent places much stress upon the opinion of the Appellate Court. It is true that court proceeded to discuss and apparently decide that the decree of March 27, 1920, by which petitioner was made a citizen, was properly vacated and set aside, although the only question raised on appeal was whether the lower court had jurisdiction to expunge the order of April 3. So far as shown, the attention of the Illinois court was not called to the Federal provision which specifically provides the manner in which such a decree may be vacated and revoked. Moreover, we are of the view, as subsequently shown, that the question for decision is controlled by Federal law and that a decision of a State court predicated upon the construction of a court rule is of no consequence.

This case has been presented and argued on the theory that petitioner's certificate of naturalization was unlawfully vacated and set aside because no notice was given to him in compliance with a rule of the Superior Court of Cook County. In our view, there is a better, in fact we think a con-

trolling, reason why the allegation that no notice was given presents a triable issue. The Congress of the United States by the terms of the Federal Constitution has by specific and definite legislation enumerated the requirements to be met by an alien in order to become a naturalized citizen, and likewise by equally definite and specific legislation the requirements to be met in revoking a certificate of naturalization.

In Baumgartner v. United States, 322 U.S. 665, 672, 64 S.Ct. 1240, 1244, 88 L.Ed. 1525, the court stated: "Congress alone has been entrusted by the Constitution with the power to give or withhold naturalization and to that end 'to establish a uniform Rule of Naturalization.' Art. I, § 8, Clause 4. In exercising its power, Congress has authorized the courts to grant American citizenship only if the alien has satisfied the conditions imposed by Congress for naturalization. There is no 'right to naturalization unless all statutory requirements are complied with.' United States v. Ginsberg, 243 U.S. 472, 475, 37 S.Ct. 422, 425, 61 L.Ed. 853. And so 'If a certificate is procured when the prescribed qualifications have no existence in fact, it may be cancelled by suit.' Tutun v. United States, 270 U.S. 568, 578, 46 S.Ct. 425, 427, 70 L.Ed. 738."

The Naturalization Act of 1940, Title 8 U.S.C.A. § 701 et seq.,[1] meticulously enumerates the requirements to be met by an alien desiring to become a citizen, as well as the requirements to be met in revoking or cancelling a certificate once granted.

 Sec. 701(357) enumerates the courts upon whom jurisdiction has been conferred, including "all courts of record in any State." It is important to keep in mind that a State court acting in naturalization matters derives its sole and exclusive jurisdiction and authority from the Federal Naturalization Act. As said by this court in Grahl v. United States, 7 cir., 261 F. 487, 490:

"But naturalization of aliens, like exclusion or deportation, is exclusively a federal function. So what Congress really did was to tender to the state court a power of attorney to exercise national authority, and the state court accepted and acted. * * * So the state court's issuance of appellant's certificate was not a judgment of a state court, protected by the aegis of its sovereign, and the present proceeding is merely an inquiry by the United States government into the action of its own agent under a power of attorney." See also United States v. Aakervik, D.C., 180 F. 137, 141.

There is no occasion to enumerate the numerous statutory provisions to be followed by an alien in becoming a naturalized citizen. No question is raised but that petitioner complied with those requirements in the instant case. It may be pertinent to observe, however, that the road to be traveled by the alien in meeting the requirements of the statute is rugged and that he carries a heavy burden in demonstrating compliance with each and every requirement. United States v. Ginsberg, 243 U.S. 472, 475, 37 S.Ct. 422, 61 L.Ed. 853; United States v. Ness, 245 U.S. 319, 38 S.Ct. 118, 62 L.Ed. 321. Sec. 734 (398) provides for a hearing, designated by the statute as final, upon a petition for naturalization. Numerous safeguards are thrown about this hearing, including the requirement that it be had in open court with the right of the United States to appear, participate in the hearing and oppose the granting of any petition.

Sec. 735 (381) provides for the "oath of renunciation and allegiance." This is the final affirmative act required of a petitioner. When the oath is subscribed to, the petitioner has reached his goal and is a citizen of the United States, on equal terms and with all the rights and privileges accorded a natural-born citizen. As was said in the Aakervik case, supra (180 F. at page 141):

---

[1] The Naturalization Act of 1906, in effect at the time Volpe was naturalized, is found in Title 8 U.S.C.A. (1927 Edition) Sec. 351 et seq. The Act of 1940, so far as it concerns the questions involved in the instant case, is substantially the same, and for convenience we shall refer to it. When referring to a section of the 1940 Act, we shall indicate in parentheses the comparable section of the 1906 Act, as shown in the 1927 Edition of U.S.C.A.

394

"* * * it has been held that the oath, when taken, confers upon the applicant the rights of a citizen, and amounts to a judgment of the court for his admission to those rights, and implies that all prerequisites have been complied with." And as said in Luria v. United States, 231 U.S. 9, 22, 34 S.Ct. 10, 13, 58 L.Ed. 101:

"Under our Constitution, a naturalized citizen stands on an equal footing with the native citizen in all respects, save that of eligibility to the Presidency."

Petitioner on March 27, 1920 was adjudicated by a court of competent jurisdiction as having complied with all the requirements of the Naturalization Act, took the oath of allegiance and renunciation, had issued to him a certificate of naturalization and of course became a citizen of the United States. This is hardly open to question. It is tacitly conceded by the respondent; in fact, it is admitted that he was a citizen from March 27, 1920 until April 3 of the same year.

As stated, Congress has provided the procedure to be followed in revoking a certificate of naturalization. Sec. 738 (405), entitled "Revocation of naturalization," provides so far as here material: "It shall be the duty of the United States district attorneys for the respective districts, upon affidavit showing good cause therefor, to institute proceedings in any court * * * for the purpose of revoking and setting aside the order admitting such person to citizenship and canceling the certificate of naturalization * * *."

It is further provided that the party against whom the action is brought shall "have sixty days' personal notice in which to make answer to the petition of the United States," and makes provision for service by publication where the party is absent. The section provides for a hearing and that when the judgment of naturalization is vacated a certified copy of such vacation shall be forwarded to the Commissioner of Naturalization.

█ This section, sometimes referred to as the denaturalization provision, squarely places upon the government not only the burden of initiating a proceeding to revoke a certificate but also that of satisfying the court of the verity of its allegations by strict proof. In Johannessen v. United States, 225 U.S. 227, at page 238, 32 S.Ct. 613, at page 615, 56 L.Ed. 1066, the court in considering a denaturalization proceeding under Sec. 738 (405) said: "Such a certificate, including the 'judgment' upon which it is based, is in its essence an instrument granting political privileges, and open like other public grants to be revoked if and when it shall be found to have been unlawfully or fraudulently procured. It is in this respect closely analogous to a public grant of land, or of the exclusive right to make, use and vend a new and useful invention." The court continued (225 U.S. at page 242, 32 S.Ct. at page 617, 56 L.Ed. 1066):

"But if, after fair hearing, it is judicially determined that by wrongful conduct he has obtained a title to citzenship, the act provides that he shall be deprived of a privilege that was never rightfully his."

More recently, in Schneiderman v. United States, 320 U.S. 118, 63 S.Ct. 1333, 87 L.Ed. 1796, the court in a denaturalization proceeding under Sec. 738 (405) reemphasizes not only the precious right to be attributed to citizenship but the heavy burden which rests upon the government in taking it away. As to the former, the court stated (320 U.S. at page 122, 63 S.Ct. at page 1335, 87 L.Ed. 1796):

"In its consequences it is more serious than a taking of one's property, or the imposition of a fine or other penalty. For it is safe to assert that nowhere in the world today is the right of citizenship of greater worth to an individual than it is in this country. It would be difficult to exaggerate its value and importance. By many it is regarded as the highest hope of civilized men."

Concerning the remedy and the burden which rests upon the government, the court stated (320 U.S. at page 125, 63 S.Ct. at page 1336, 87 L.Ed. 1796):

"The remedy afforded the Government by the denaturalization statute has been said to be a narrower one than that of direct appeal from the granting of a petition. [Citing cases.] * * * To set aside such a grant the evidence must be

'clear, unequivocal, and convincing'—'it cannot be done upon a bare preponderance of evidence which leaves the issue in doubt.' [Citing cases.] This is so because rights once conferred should not be lightly revoked. And more especially is this true when the rights are precious and when they are conferred by solemn adjudication, as is the situation when citizenship is granted."

Thus there can be no doubt but that the entire field of naturalization legislation is within the exclusive domain of Congress and the procedure both for naturalization and denaturalization has been specifically and definitely established. One who seeks the former, just as one who seeks the latter, has the burden of showing strict compliance with the procedure thus established. This must be true in all courts upon whom Congress has conferred jurisdiction, Federal and State alike. As we have shown, a State court when acting in naturalization matters does so as a Federal court or as an agent of the Federal government. It seems plain that when acting in such capacity it cannot depend upon an iota of authority which may stem from its own rules or the State law, whether embodied in statutory provisions or in the decisions of its courts.

■ The fact that the Superior Court had a rule which provided for the vacation of judgments under certain circumstances can have no application to a denaturalization proceeding because the court when acting in such capacity is bound by the procedure adopted by Congress. Neither do we need to inquire as to the authority of a State court over judgments during the same term at which they were entered. Whatever may be the law as to such judgments generally, it can have no application to a naturalization judgment for the reason that Congress has specifically provided the manner in which such judgment may be revoked or vacated.

Section 738 (405) makes no mention and furnishes not the slightest indication that a certificate of naturalization can be cancelled or revoked during term time in any different manner than at a subsequent term. By its express terms, it applies to all situations alike. It makes no difference whether the motion to vacate is made the next day after such certificate has issued or at some subsequent term. We think a reading of the statute prevents any other conclusion, but if it was open to interpretation we would still think that it applied to a motion to revoke made during the term for the reason that a naturalization judgment, together with the oath, is the final step. The applicant at that moment becomes a citizen. If a State court can invalidate a naturalization certificate in contravention of the plain terms of the Federal statute, as was done in the instant case, on the pretext that it was authorized to do so by its self-promulgated rules, we see no reason why it could not by the adoption of rules change in other respects the procedure which Congress has prescribed both for naturalization and denaturalization. We think it has no such authority or jurisdiction.

It is interesting in this connection and pertinent, we think, to note that the Federal Rules of Civil Procedure, 28 U.S.C.A. following section 723c, although making liberal provision (Rule 60) for the modification and vacation of judgments improperly entered, are expressly made inapplicable to naturalization proceedings. Rule 81(a) (2). They specifically recognize the requirement of Sec. 738 (405) that a person whose certificate is sought to be cancelled shall "have sixty days' personal notice in which to make answer," by providing in Rule 81(a) (6) that "The provisions for * * * allowing the defendant 60 days within which to answer in proceedings to cancel certificates of citizenship under the Act of June 29, 1906 * * * remain in effect." While we have no way of knowing, it seems reasonable to think that the rulemakers recognized not only the supreme power of Congress to prescribe the conditions and terms upon which a certificate of naturalization might be revoked but that it had done so, and that a rule in conflict therewith would be of no effect. The same reason applies with much greater force to a court rule which is in conflict with the requirement made by Congress.

■ ■ We therefore conclude that the order of April 3, 1920 was void if entered, as alleged, without notice to petitioner.

This is so because under such circumstances it was entered in utter disregard of the manner and procedure prescribed by Congress, and as a result thereof had no effect upon the order of March 27, 1920 admitting petitioner to citizenship. Furthermore, we are of the view that even though we assume, contrary to our holding, that the Federal procedure is inapplicable, we still think the order of April 3, 1920 is void if, as alleged, it was entered without notice as required by the court rule. Respondent does not urge to the contrary but appears to rely upon some sort of waiver by petitioner or estoppel against him by reason of a claimed recognition on his part that his citizenship had been cancelled or revoked. In its brief, after relating the proceedings before an Immigration Inspector, there appears the following statement: "The above excerpts of the record clearly demonstrate that the petitioner, Volpe, was fully cognizant of the proceedings had in the Superior Court of Cook County, and further demonstrate that he was aware of the fact that he had been a citizen of the United States for five or six days, but that the order admitting him to citizenship was vacated."

It is true that the record before the Inspector discloses that petitioner was in a badly confused state of mind as to whether his citizenship had been revoked. On some occasions he claimed that he was a naturalized citizen and on other occasions he appears to have conceded that his naturalization had been revoked. During the hearing on deportation, he was asked, "What happened to your United States citizen papers that you did receive.'" In response to this question, petitioner stated in substance that the Chief Naturalization Examiner requested that he bring to the Examiner's office his naturalization papers, and that he was told, "Well, if you don't cancel these papers I will have to hold you for perjury." It also appears that petitioner was requested by the Chief Examiner to sign a paper requesting that his naturalization proceeding be dismissed and that as a result petitioner made such request on March 28, 1924. It must be obvious that if the court's order of April 3, 1920 was void, there was no proceeding pending and consequently no proceeding which could be dismissed in 1924.

At another point the Examiner stated: "The United States Naturalization file shows that one Antonio Volpe, petitioner No. 30179 was admitted to citizenship March 27, 1920, by Judge David, and on the following Saturday, April 3, 1920, the order admitting Antonio Volpe to citizenship was set aside and the certificate issued to him cancelled." Then followed this question, "Is that correct?" to which petitioner answered, "Well, I don't know that, I didn't know that they cancelled my papers."

No wonder petitioner was confused as to what had happened to his status as a citizen duly established by the court on March 27, 1920. That question would and has taxed the ingenuity of numerous lawyers and is the difficult problem presented on this appeal. Surely petitioner did not and could not have waived the statutory provision which Congress had enacted providing the specific and definite means by which his citizenship could be revoked. Neither can any statements made or acts performed by petitioner be utilized to legalize the order of April 3, 1920. That order if void when entered is void today.

The order appealed from is therefore reversed, with directions that respondent be permitted to answer the petition and to show if it can that the order of March 27, 1920 admitting petitioner to citizenship has been revoked or cancelled, in conformity with the law as decided herein.

SPARKS, Circuit Judge, dissenting.