# Neal Hambleton *versus* Mary L. Yocum by Her Guardian The Real Estate Title, Insurance and Trust Company, and Joseph W. Hambleton.

On a feigned issue to try the validity of a will, a verdict in support of the will was taken under an agreement of counsel of some of the parties, judgment entered thereon, and the will, with certificate of the verdict and judgment, was remitted to the Register, who admitted it to probate. After the expiration of the term at which this judgment was entered, petitions were filed by other parties in interest, alleging that the verdict was taken by collusion, without notice to them and in prejudice to their rights, and praying that the verdict and judgment be set aside and a new trial ordered. The court granted the prayer of said petition and made absolute a rule for a new trial in pursuance thereof, whereupon a writ of error was taken, alleging said action of the court:

*Held*, That the jurisdiction of the Court of Common Pleas was exclusive of the Register; that its judgment was final, not interlocutory, and as fully within the control of the court as any of its records, even though a certified copy of the verdict and judgment had been remitted to the Register:

*Held, further*, That said court had the right to open and set aside this judgment and grant a new trial, for proper cause, even after the expiration of the term at which it was entered:

*Held, further*, That the writ of error would therefore be quashed as premature.

January 12th, 1885. Before MERCUR, C. J. GORDON, PAXSON, TRUNKEY, STERRETT and GREEN, JJ. CLARK J. absent.

ERROR to Court of Common Pleas, No. 1, of *Philadelphia County:* Of January Term, 1884, No. 261.

This was, in the court below, a feigned issue entered on a precept from the Register of Wills, to try the validity of the alleged will of William Neal, deceased, in which Neal Hambleton was plaintiff, and Anna Mendenhall and six others, heirs or next of kin of the decedent, were defendants.

William Neal died June 30th, 1881, leaving an estate valued at about $100,000. His heirs and next of kin consisted of three branches, descendants of three sisters, and known as the Walton, Hambleton and Taylor branches. On September 22d, 1881, a precept from the Register of Wills was brought into Common Pleas to try the validity of an alleged will of said decedent. After citation to bring in the heirs and next of kin, the cause was put down for trial October 11th, 1883, and numerous witnesses subpœnaed. Several days before the trial, however, an agreement was entered into between counsel who

signed " as attorney for Neal Hambleton and parties, except of the Taylor branch," and counsel for the Taylor branch of decedent's family,—which agreement was as follows :

" For the purpose of ending all litigation connected with the will of William Neal, deceased, and his estate, and obtaining a final settlement thereof, it is agreed :—

" 1. That the will be established by verdict of jury and judgment; that executor file account so that it may be adjudicated in December, and distribution made of all that can be got from Provident Company, and converted into money by that time.

" 2. The executor to be allowed five per cent. commissions (besides commissions charged by Provident), and on such allowance being confirmed by court, that he pay to John M. Broomall, Esq., attorney for contestants, two thousand dollars.

" 3. In the executor's account counsel fees of two thousand dollars in contested. will case (half to J. Cooke Longstreth, and half to J. M. Broomall) to be charged and allowed, besides usual fees to executor's counsel for advice and services in settlement of estate, all costs in pending suits and witness fees to be paid out of estate.

" 4. Suit of Provident Company, Administrator *pendente lite v.* Hambleton, to be referred for final settlement to Messrs. Longstreth and Broomall, and an umpire to be chosen by them."

The cause was duly called for trial on October 11th, the subscribing witnesses to the will produced, and a verdict rendered for plaintiff establishing the will. On October 17th the jury fee was paid, judgment entered on the verdict and the will with certificate of the verdict and judgment remitted to the Register,,who admitted it to probate.

The trial was in September Term, 1883, which expired December 1st. On December 29th, petitions were filed by The Real Estate Title Insurance and Trust Company, guardian for Mary L. Yocum, a minor, who was a niece of decedent, and by Joseph W. Hambleton, a nephew, setting forth the above agreement of counsel and the proceedings thereunder, and that they, the petitioners, as well as certain others of the Hambleton branch, had no notice of the proceedings until after the judgment was entered; and further, that William Neal was not of sound mind when he made his alleged will. They therefore prayed for a rule to show cause why the verdict should not be set aside, the judgment vacated and a new trial granted. This rule was granted by the court, and after depositions and argument was made absolute January 12th, 1884. Thereupon Neal Hambleton took this writ of error assigning for error the action of the court : 1. In setting aside the verdict of October

12 OUTERBRIDGE—20

11th, 1883. 2. In vacating the judgment of October 17th, 1883.·
3. In granting a new trial. 4. In assuming that after the trial
of the issue formed under the precept of the Register of Wills,
judgment entered thereon, and the will and result of the issue
certified back to the register, they had any further control of
the case.

*J. Cooke Longstreth*, for plaintiff in error.—The judgment
of Common Pleas was an adverse judgment regularly entered
on a verdict rendered on a trial on the merits, and its vacation
at a subsequent term was clearly error: King *v.* Brooks, 72
Pa. St., 364; Catlin *v.* Robinson, 2 Watts, 379; Conrad *v.* In-
surance Co., 32 P. F. S., 66. No fraud was substantially
alleged, much less established. Proponent's counsel had the·
right to assume that contestants' counsel had in fact, as he
certainly had in law, the control of contestants' case. He had
no notice nor even ground for suspicion that parties who·
had been regularly cited (as petitioners had been) had not in-
trusted the care of their interest to the attorney representing
the active contestants of record. There was no judgment
remaining in Common Pleas No. 1 which that court could open,
no verdict which it could set aside, no case in which it could
grant a new trial. Back of the question of the exercise of a
discretion lies the question of jurisdiction. There never was
any judgment enforceable by process in the Common Pleas
except the judgment for costs, and that was satisfied long
before they attempted to meddle with it. As long as that
court had control of the issue, it could grant a new trial.
But the law fixed a term to such control, and when the law
provided that " the facts established by the trial and certified·
by the register as aforesaid, shall not be re-examined by the:
said register " (Purd. Dig., 406, pl. 9), it certainly did not in-
tend that they should be re-examined by the court (whose
functions, under the law, ended with its certificate· to the
register) at any time thereafter in its discretion. There are
judgments entered in the Courts of Common Pleas, which
they cannot open, and the re-trial of which by them is anoma-·
lous and illegal: Lacock *v.* White, 19 P. S. R., 495; and if,
as is said in Boyd *v.* Miller, 52 Id., 431, one court cannot over-
haul a judgment while it remains within the jurisdiction of
the court that rendered it, how much worse would it be to hold
that when one court on the precept of another has tried an
issue of fact and certified it back, it can of its own motion
re-try it. Either the re-trial would be an empty form, or the
effect of it might be to upset the judgment of an independent
tribunal. The ground of the register's sentence admitting the
will to probate was the testimony of the subscribing witnesses.

This was corroborated by the finding on the issue *devisavit vel non* sent into the Common Pleas, certified back to the register. No statute provides for a re-trial of the fact by that court, and its action looking to this end was, by reason of the statutory limitations of its jurisdiction, *coram non judice*.

*Geo. M. Conarroe*, for defendants in error.—The parties in interest in an issue *devisavit vel non*, whether they be parties of record or not, have, under the direction of the court, the control of the issue, and not the mere nominal or record parties in the suit. "It follows that as long as there is a party in interest not represented in the agreement to submit the case to a jury without evidence, it has no binding effect on that party, and vitiates the verdict so taken, and he may move to set it aside, and vacate the judgment entered on it:" Sheetz v. Whitaker, 7 W. N. C., 403; Ottinger v. Ottinger, 17 S. & R., 142; 2 Smith's Lead. Cas. (7th Am. ed.), 809, 814; Woodruff v. Taylor, 20 Vt., 65; Patton v. Allison, 7 Hump. (Tenn.), 320; Deslonde v. Darrington, 29 Ala., 92; Price v. Taylor, 21 Md., 356; Price v. Moore, Id., 366; Sawyer v. Dozier, 5 Ired., 97; Smith v. Harrison, 2 Heisk. (Tenn.) 230. And this can be done even if a term has elapsed since the judgment was entered: Stephens v. Stephens, 1 Phila., 109. On an issue to try the validity of a will, the Court of Common Pleas, before whom it is tried, and not the Register of Wills, has the power of awarding a new trial; and on proper cause shown, such a new trial will be granted: Vanlear v. Vanlear, 4 Yeates, 3. For all practical purposes, the Common Pleas has exclusive jurisdiction of the case, and its errors can only be corrected by appeal to the Supreme Court: Mintzer v. Baker, 5 Phila., 484.

On motion to quash the writ of error—The court below set aside the verdict and granted a new trial on the ground that the verdict was obtained by a collusive agreement. This was not a final judgment, and such action is not the subject of a writ of error: Hill v. Irwin, 8 Casey, 314; Chadwick v. Ober, 20 P. F. S., 264.

Mr. Justice GORDON delivered the opinion of the court, February 23d, 1885.

When, under the Act of the 15th of March, 1832, the register has certified an issue to the Common Pleas, the matter therein involved passes from his jurisdiction, and is thenceforth wholly within the jurisdiction of said court, and by its judgment he is finally concluded. Its finding can neither be re-examined by him, nor by the Supreme Court on appeal: vide 13th section of the Act above cited. From this it follows

that if the proceeding in the Common Pleas is merely for the information of the conscience of the register; if its finding is but interlocutory, and is not to have the force of a final judgment of that court, then however great may have been the imposition practised upon it; though its finding may have been but the result of a fraudulent scheme devised for the purpose of producing the result reached, and though one or more of the parties interested may have been grossly cheated, yet, after the transmission of a certificate of the verdict to the register, there can be no possible remedy; the matter according to this theory is beyond the reach of the Common Pleas, and, as we have seen, the statute prohibits the interference of the register. We are not prepared to adopt a conclusion of this kind; a conclusion that must prove a safe harbor for fraud the most dangerous, and most easily concocted and practised. But the question is not one of first impression. As early as the year 1803, in the case of Vanlear *v.* Vanlear, 4 Yeates, 3, it was held by this court, that that clause of the Act of 1791, which directs, that "if an issue be sent from the register's court to try the facts of any cause, litigated before them, and a verdict establishing the said facts be returned, the said facts shall not be re-examined on appeal," related to appeals on wills to the high court of errors and appeals, and that the words, "a verdict establishing the said facts," implied a judgment thereon. It was further said, per YEATES, J., that it had been fully settled, that on an issue to try the validity of a will, the court before which it was tried, and not the register, had the power of awarding a new trial. In the case of Vansant *v.* Boileau, 1 Bin., 444, which involved the question of quashing a writ of error taken to a judgment on a feigned issue to try the validity of a will, TILGHMAN, C. J., said that he could see nothing in the Act of 1791 which looked like an intent to place the register's court on the footing of the Chancellor of England, who exercises the right of ordering a second trial if not contented with the first; and that it would be a serious defect in the administration of justice if the errors in such trial could not be corrected by this court. The result was that the court refused to quash the writ. Under the Act of 1832 we have the cases of Hoxworth *v.* Miller, 7 Barr, 458, and McMasters *v.* Blair, 7 Ca., 467, in which the doctrine of the above cited cases is recognized and enforced. In the former, on a writ of error, the judgment of the court below was reversed, and the case sent back for re-trial; and in the second it was said that the form of trial intended by the writ issued by the register, was equivalent to the original writ of the English common law, and gives the Common Pleas jurisdiction of the case, and that according as the issue

is found by the jury, judgment is entered with costs as in other cases, on which execution may issue.

We have it thus established beyond doubt, that when the verdict was rendered in the case in hand, judgment followed as of course; that the Common Pleas had a jurisdiction independent of that of the register; that its judgment was not merely interlocutory and dependent upon the action of another court, but was conclusive and final, and that over the said judgment it had as full control as over any other part of its records. These records never passed from the custody of the Common Pleas. All the register could require and all the court could give, was a certified copy of its proceedings. There being, then, a judgment in the court below, the only remaining question is, could it be opened and set aside on proper cause shown?

If the Common Pleas has not such power it is the solitary instance in which that power is wanting. Ordinarily courts, as was said by Judge LOWRIE, in Stephens v. Stephens, 1 Phila., 108, "may open and set aside judgments not only after a term, but after years, governed only by the facts and equity of the case, and by the wise cautions of the Supreme Court as to the rights of third persons." The case of Cochran v. Eldridge, 13 Wr., 365, is authority for holding that our Pennsylvania courts have full chancery powers to relieve against inequitable judgments, and these powers extend to what we may consider the extreme cases of judgments on awards of arbitrators, notwithstanding the very full statutory remedies which are provided for their correction. It was also said, by ROGERS, J., in the case of Kalbach v. Fisher, 1 Rawle, 323, that the power of the Common Pleas to open its judgments is most ample, and that policy requires its liberal use, otherwise manifest injustice would result from the variety of shapes which fraud is wont to assume in the complication of human transactions. The language in the cases above cited is very broad and all-embracing, and to its fullest extent can apply only to judgments taken on confession or in default, and not to such as result from trial and verdict, for ordinarily such judgments can only be set aside or opened within the term to which they were rendered. The case in hand, however, involving, as it does, the charge of fraud in the procurement of the verdict on which the judgment was rendered, allows of the application of the doctrine stated, and so permits us to adopt the language of the authorities quoted. If then, our Courts of Common Pleas are thus clothed with full equity powers over their own records and judgments, and if, as we have seen, the judgment under discussion remained, after the certificate to the register, in the court which tried the issue, we cannot see why on

[Hambleton *v.* Yocum.]

proper cause shown, that judgment might not be opened for the purposes of a new trial.

Conceding, then, that the court had such power, and we have no doubt but that the cause shown was sufficient to warrant its action,—if the evidence be true, and we must so take it, both the court and the defendants in error were grossly imposed upon. We agree that those of the parties who had taken an active part in contesting the will, might have settled and compromised their own interests with the proponent, or they might have withdrawn from the contest and allowed a verdict to have been taken in favor of the will, for they were not obliged to carry on the contest if the other parties in interest neglected it. But as the matter is now made to appear, a verdict was obtained through a false representation. All parties, whether interested for or against the will, were alleged to have signed the articles of compromise by their attorneys when such was not the case, and it is quite certain that had the court known the facts as they actually were, it would not have permitted judgment to have been taken as it was. But of these facts the court was kept in ignorance, and so became the unconscious instrument in the procurement of a fraudulent verdict, and to allege that after that court has discovered a device of this kind it is powerless to defeat it by undoing its own work, is a proposition to which we will not readily give ear. As was said in the case of Ottinger *v.* Ottinger, 17 S. & R., 142, where a decree is had admitting a will to probate, the proceedings are not strictly between the parties, because the decree is conclusive on all the world. It thus appears, that unless the Common Pleas has the power claimed for it, the appellees are concluded by a judgment to which they were not parties, and which, as they allege, was obtained by fraud. This ought not to be, and, indeed, cannot be under the judicial polity of Pennsylvania. We, therefore, quash the writ of error as premature, and order a return of the record to the court below for further proceedings.