# Macoluso's Naturalization.

*Naturalization—Courts—Jurisdiction—Fraud or forged certificate—Service.*

1. The authority to vacate, open or set aside a judgment or decree is incident to all courts of record, of general jurisdiction, and extends to granting relief by opening or vacating such judgments or decrees as are utterly void and mere nullities. Such relief is granted by virtue of the equitable powers of the court which may be successfully invoked in all cases when the action of the court has been procured by fraud, deception or collusion.

2. The power to correct or purge its records is inherent in every state court of general jurisdiction, and it may be exercised in the case of the naturalization of an alien as well as in any other case in which it has jurisdiction to act.

3. The Act of Congress of June 29, 1906, Chap. 3592, U. S. Stat. 596, does not deprive a state court from entering a decree annulling a forged certificate of citizenship and directing that it be surrendered for cancellation upon a private petition joined in by the district attorney of the county the court of which entered the decree.

4. Upon a petition to the Court of Common Pleas of one county for a rule to show cause why a certificate of naturalization purporting to have been issued by such court should not be cancelled where at the hearing it appears that the party whose name appeared on the certificate was dead and that his son resided in another county, service upon the son will be held sufficient where the hearing of the rule is continued and ten days' notice thereof directed to be given to the son, and the rule and a notice of taking depositions are personally served on the son by a justice of the peace of the county in which he resided at least ten days before the hearing on the rule and the time for taking depositions.

Argued April 29, 1912. Appeal, No. 305, Jan. T., 1910, by John Macoluso, from decree of C. P. Luzerne Co., ordering the cancellation of certificate In re naturalization of Calogero Mascoluso on petition of Frank Lucino. Before FELL, C. J., BROWN, MESTREZAT, POTTER, ELKIN, STEWART and MOSCHZISKER, JJ. Affirmed.

Petition for rule for cancellation of certificate of naturalization.

The facts appear in the opinion of the Supreme Court.

The court decreed that the certificate of naturaliza· tion should be surrendered for cancellation, and declared the same null and void.

John Macoluso, a son of the person named in the certificate of naturalization, appealed.

*Error assigned* was the decree of court.

*William Wilhelm,* for appellant, cited Boyd v. Nebraska, 143 U. S. 135 (12 Supr. Ct. Repr. 375.)

OPINION BY MR. JUSTICE MESTREZAT, July 2, 1912:

The desire of John Macoluso, the appellant, to hold and exercise the functions of the office of supervisor of Kline Township, Schuylkill County, has resulted in a judicial decree that he is not a citizen of the United States. John was born in Italy and came to this country in his childhood. Since he became of age he has voted on an alleged naturalization certificate purporting to have been issued to his father, Calogero Macoluso, dated September 26, 1896, and bearing the seal of the Court of Common Pleas of Luzerne County. John was elected supervisor of Kline Township, Schuylkill County, in 1910. His countryman and opponent, Frank Lucino, instituted quo warranto proceedings against him in the Common Pleas of Schuylkill County on the ground that the alleged naturalization certificate of his father was fraudulent and void, and that, therefore, John was not a citizen. The court declined to proceed with the hearing and continued it until the Court of Common Pleas of Luzerne County had passed upon the validity of the certificate of citizenship of Calogero Macoluso. Lucino then presented a petition to the Common Pleas of Luzerne County, in which the district attorney of that county joined, praying for a rule on

the Macolusos to show cause why an order should not issue directing the certificate of naturalization issued to Calogero Macoluso to be delivered to the prothonotary for cancellation and that a decree annulling the same be entered by the court. A rule was granted on Calogero Macoluso to show cause why the decree of naturalization should not be annulled and the certificate thereof surrendered for cancellation. Subsequently an affidavit was filed by which it appeared that Calogero Macoluso was dead, and that his son resided in Schuylkill County. The hearing of the rule was then continued, and ten days' notice thereof was directed to be given John Macoluso. The rule and a notice of taking depositions were personally served on John by a justice of the peace in Schuylkill County at least ten days before the hearing on the rule to show cause and the time for taking depositions. John did not appear at the hearing of the rule nor when the depositions were taken. The depositions and record of the proceedings on the quo warranto in Schuylkill County were submitted to the court on the hearing of the rule, and after due consideration the court made "the rule absolute to surrender such certificate for cancellation, hereby adjudging the same to be null and void." From this order or decree, John Macoluso took this appeal.

The appellant contends that the court erred in making the order or decree in question because (a) the service of the rule on him was defective, and (b) the Act of Congress of June 29, 1906, Ch. 3592, 34 U. S. Stat. 596, having provided a definite and specific mode of procedure to procure the cancellation of the naturalization certificate, it was exclusive and must be pursued.

We see no merit in either of these positions. The learned court found on ample evidence that "no judgment or decree of this court was ever made naturalizing the said Calogero Macoluso, who is now dead; nor was any certificate ever issued by this court or under its authority

certifying such naturalization, but the said certificate in the possession of the said John Macoluso is a forged and fraudulent certificate bearing the seal of this court without its authority." Under these facts, the court had the power and it was its duty to adjudge the certificate to be void and compel its surrender for cancellation. The certificate was not sustained by any record or entry of the court, and is therefore a nullity: In re O'Sullivan, 137 Mo. App. 214, 216. The authority to vacate, open or set aside a judgment or decree is incident to all courts of record, of general jurisdiction, and extends to granting relief by opening or vacating such judgments or decrees as are utterly void and mere nullities: 23 Cyc. 893. Such relief is granted by virtue of the equitable powers of the court which may be successfully invoked in all cases when the action of the court has been procured by fraud, deception or collusion. This court has frequently recognized the doctrine: Hambleton v. Yocum, 108 Pa. 304; Smaltz v. Hancock, 118 Pa. 550; Fisher v. Hestonville, Etc., Passenger Ry. Co., 185 Pa. 602; Cochran v. Eldridge, 49 Pa. 365. In the last cited case, WOODWARD, C. J., delivering the opinion said (p. 370) : "Whether the principles of these cases be applied by courts of chancery as an independent jurisdiction or by courts of law exercising equity powers, is a matter of no significance. The material point is that such principles do pervade our jurisprudence, and it is well they do, for they are only the dictates of natural justice and common sense. That wholesome maxim of the common law, that fraud vitiates whatever it touches, makes no exception of judgments at law. No court of justice will set aside or even be led to look into a solemn judgment on light or trivial grounds; but when it is alleged upon adequate proofs that a judgment in whole or in part has been obtained by a suppression of truth which it was the duty of the party to disclose or by the suggestion of a falsehood or by any of the infinite and therefore undefinable

means by which fraud may be practiced, no court will allow itself, its records, and the process of law to be used as instruments of fraud."

Naturalization is a judicial act: Spratt v. Spratt, 29 U. S. (4 Peters) 393; for it is a cause to be heard and decided on evidence, and involves a question of legal right: Rump v. Commonwealth, 30 Pa. 475.

It follows that the doctrine of the above cases applies to setting aside or vacating orders or decrees of naturalization and cancellation of certificates of naturalization, and it has been so held: 2 Cyc. 115, and notes.

It is clear, therefore, that the court had the authority to prevent the continued fraudulent use of its seal by requiring the surrender of the certificate of naturalization which was a forgery and not authorized by a judgment or decree of the court.

The appellant has no just ground to complain of the service of the rule made upon him. The rule and notice of the time and place of taking depositions under a rule issued for the purpose were served personally on appellant in Schuylkill County at least ten days prior to the hearing by giving him true and attested copies thereof. It is true that the service was made by a justice of the peace of Schuylkill County, and not by a sheriff or constable, but that is immaterial. The service was not required to be made under the Act of July 9, 1901, P. L. 614. This is not an original proceeding, nor was the rule awarded against John Macoluso, the appellant. After the rule was issued against his father and the latter's death was suggested by an affidavit, the court continued the hearing on the rule, and directed "ten days' notice thereof to be given John Macoluso." The service of this notice could be made by a justice of the peace or any other citizen of Schuylkill County. It was sufficient if notice of the proceedings were required to be given the appellant at all, which we must not be understood as conceding.

The Act of Congress of June 29, 1906, provides a procedure for setting aside and canceling certificates of citizenship obtained by fraud or otherwise illegally procured in any court exercising jurisdiction in naturalization proceedings. Section 15 enacts, inter alia, that "it shall be the duty of the United States District Attorneys for the respective districts, upon affidavit showing good cause therefor, to institute proceedings in any court having jurisdiction to naturalize aliens in the judicial district in which the naturalized citizen may reside at the time of bringing the suit, for the purpose of setting aside and cancelling the certificate of citizenship on the ground of fraud or on the ground that such certificate of citizenship was illegally procured." This section, it will be observed, simply imposes the duty upon the United States District Attorney of the proper district when cause is shown by affidavit, to institute proceedings for canceling a certificate of citizenship. It does not, directly or inferentially, make the procedure exclusive or prohibit the enforcement of other remedies for striking down fraudulent naturalization certificates. The statute furnishes a new remedy for a wrong for which there was an existing appropriate remedy, and hence it is cumulative and not exclusive: King v. Pomeroy, 121 Fed. Repr. 287, 292. In the case of the United States v. Spohrer, 175 Fed. Rep. 440, 447, it is said: "The legislation of 1906 simply permits to be done by different courts and somewhat different procedure what before could, under like conditions, in my judgment, have been done by a bill in equity."

Whatever may be the proper interpretation of the Act of 1906, we think it clear that it does not prevent a State court from controlling its own records in any case in which it has jurisdiction to act. If a State court has authority to naturalize aliens and issue certificates of citizenship, it is not within the power of Congress to deprive it of its equitable powers to correct any fraud upon, or fraudulent use of, its process. Congress may

establish a uniform rule of naturalization, as authorized by the Federal Constitution, but it certainly will not be presumed, in the absence of a declaration to the contrary, that such legislation prevents any court, State or Federal, from annulling a certificate of citizenship bearing its seal which is a forgery. The power to correct and purge its records is inherent in every State court of general jurisdiction, and it may be exercised in the case of the naturalization of an alien as well as in any other case in which it has jurisdiction to act. It, therefore, follows that the Act of 1906, relied on by the appellant, did not deprive the court below from entering its decree annulling the forged certificate of citizenship and directing that it be surrendered for cancellation.

The decree is affirmed.