**FINUCANE et al. v. BINDCZYCK.**

**No. 10287.**

United States Court of Appeals
District of Columbia Circuit.

Argued Feb. 13, 1950.

Decided June 19, 1950.

Mr. L. Clark Ewing, Assistant United States Attorney, Washington, D. C., with whom Messrs. George Morris Fay, United States Attorney, Ross O'Donoghue, Assistant United States Attorney, and Joseph M. Howard, Assistant United States Attorney, Washington, D. C., were on the brief, for appellants.

Mr. Joseph A. Fanelli, Washington, D. C., for appellee.

Before CLARK, WILBUR K. MILLER and PROCTOR, Circuit Judges.

CLARK, Circuit Judge.

The appellants, defendants below, have prosecuted this appeal to test the validity of a summary judgment in favor of the appellee, Bindczyck, declaring him to be a citizen of the United States and granting him appropriate injunctive relief.

Peter Alfons Bindczyck, while a member of our armed forces stationed at Camp Ritchie, Maryland, became a citizen of the United States by naturalization order of the Circuit Court of Frederick County, Maryland, on December 2, 1943, and his certificate of naturalization, No. 6089814, was duly issued by that court. Seven days later, on December 9, 1943, within the same term of the same court, on motion by Leicester W. Cook, United States Naturalization Examiner of the Immigration and Naturalization Service, Washington, D. C., made on behalf of the United States Government in the original proceedings, "the order of admission to citizenship * * * [was] vacated and set aside, and restored to the pending calendar for immediate hearing, and * * * the original and duplicate certificate of naturalization * * * [was ordered] voided and returned to the Immigration and Naturalization Service." [1] The basis for that court's order, as appears from the transcript of the hearing on the motion filed in the United States District Court for the District of Columbia in connection with appellants' motion to dismiss the complaint, was that Bindcyzck, shortly after he was naturalized, made statements to the effect that he had no love for the United States and that he would not fight for this country. At the hearing on the motion in the Maryland court he testified that he had previously stated in court that he was willing to bear arms against all enemies and that he approved of this government, whereas neither statement was true and he was testifying falsely at the time.

Although appellee mentions that the motion was filed, served, heard and decided all on the same day; that he was away from home under military orders and under military arrest at the time; and that he was without counsel, he specifically waives any rights that he might have acquired had any of this procedure departed from the rules of the Maryland court or from the constitutional guarantees of due process on the ground that they are irrelevant to the issue presented here. And the appellants admit that the procedure by which appellee's naturalization order was set aside and vacated in no way complies with section 338 of the Nationality Act of 1940 [2] which provides:

"(a) It shall be the duty of the United States district attorneys for the respective districts, upon affidavit showing good cause therefor, to institute proceedings in any court specified in subsection (a) of section 301 in the judicial district in which the naturalized citizen may reside at the time of bringing suit, for the purpose of revoking and setting aside the order admitting such person to citizenship and canceling the certificate of naturalization on the ground of fraud or on the ground that such order and certificate of naturalization were illegally procured.

"(b) The party to whom was granted the naturalization alleged to have been fraudulently or illegally procured shall, in any such proceedings under subsection (a) of this section, have sixty days' personal notice in which to make answer to the petition of the United States; and if such naturalized person be absent from the United States or from the judicial district in which such person last had his residence, such notice shall be given by publication in the manner provided for the service of summons by publication or upon absentees by the laws of the State or the place where such suit is brought."

Nor would we now hesitate to uphold appellee had the appellants, though proceeding as they did, purported to have acted pursuant to the provisions of the aforesaid section. In such cases the authorities are abundantly clear in denying the allowance of the order vacating and setting aside a naturalization where the strict letter of section 338 as laid down by Congress is not followed. But appellants' position is that that section (and its predecessor, sec-

1. Order of the Circuit Court, Frederick County, Maryland, entered December 9, 1943, after a special hearing on motion to vacate and set aside Bindczyck's naturalization order and signed by Edward S. Delaplaine, Chief Judge.

2. 54 Stat. 1158, 8 U.S.C.A. § 738.

tion 15 of the 1906 Act,[3] which 'for the purposes of this opinion is substantially the same) does not abridge the heretofore existing remedies for setting aside and vacating such orders but merely enlarges them. Section 338 is simply cumulative in effect and does not provide the only and exclusive method whereby a naturalization order may be vitiated. Appellee, on the other hand, has taken the position, which prevailed below, that Congress, by virtue of the Constitution which empowers it "to establish an uniform Rule of Naturalization," [4] has, by enacting section 338 of the Nationality Act of 1940, and its predecessor section 15 of the 1906 Act, effectively foreclosed the possibility of vacating and setting aside an order of naturalization by any other method than the one thus prescribed; and, since the government has not proceeded in accordance with that section, the appellee is entitled to a declaratory judgment proclaiming his citizenship.

That Congress has the power to enact uniform laws governing denaturalization cannot be doubted.[5] But the first question before us involves the extent to which Congress has exercised this power, and not whether the power exists to the extent which would be necessary in order to sustain appellee's position; for only if we conclude that it has exercised this power so as to make the remedy thus provided exclusive of all others that may have heretofore existed, would we then have to decide whether the constitutional grant extended so far. Doubt has been expressed in that regard.[6]

Little has been written on the question before us, and so before we proceed to an examination of whatever authority there is on the subject, it will be helpful to place the problem in its proper posture. Stripped to its essentials the question is: Has Congress, by enacting a statute governing denaturalization, proscribed the power of a naturalizing court of proper jurisdiction to set aside, vacate, and assign for rehearing its own order of naturalization within the same term of court, in the same manner, and on the same grounds as any other of its judgments similarly assailed?

There are certain basic fundamentals with which we should first acquaint ourselves. These are:

(1) An order of naturalization is like any other judgment of the court issuing the order.[7]

(2) Judgments of a court of record are appealable.[8]

(3) Under proper circumstances judgments of a court of record are subject to being opened up, modified, corrected, set aside, and vacated.[9] The power of a court to so act, though much modified today by statute, existed at common law [10] and has always been exercised in the judicial discretion of such court.[11]

(4) The proceeding to vacate a judgment, especially when made within the same term of court, is generally regarded as a further proceeding in the same action.[12]

(5) A statutory remedy is to be considered as cumulative of existing common law remedies, unless the contrary is so declared in express terms or by necessary implication.[13]

---

3. 34 Stat. 601, 8 U.S.C. (1934 ed.) 405.

4. Art. I, sec. 8, cl. 4.

5. Knauer v. United States (1946), 328 U. S. 654, 673, 66 S.Ct. 1304, 1314, 90 L. Ed. 1500, 1511.

6. In re Macoluso's Naturalization, 237 Pa. 132 (1912), 85 A. 149, Ann.Cas.1914B, 226.

7. Tutun v. United States (1926), 270 U. S. 568, 46 S.Ct. 425, 70 L.Ed. 738.

8. And naturalization orders are appealable, Tutun v. United States, supra, note 7.

9. 31 Am.Jur. 263, and cases cited therein.

10. Sunderland et al. v. Braun Packing Co. et al. (1912), 119 Md. 125, 130, 86 A. 126, 127 Ann.Cas.1914D, 156.

11. Sunderland et al. v. Braun Packing Co., et al., supra, Note 10, 119 Md. at page 129, 86 A. at page 127.

12. 31 Am.Jur. 268.

13. Hoage v. Murch Bros. Const. Co. (1931), 60 App.D.C. 218, 220, 50 F.2d 983.

From the foregoing it would appear, therefore, that independently of any decisional law, the Circuit Court for Frederick County, Maryland, has the power to set aside and vacate its own naturalization order within the same term of court in the same way that it may set aside and vacate any other of its judgments. But the appellee insists that section 338 of the Nationality Act of 1940 as well as its predecessor were clearly intended by Congress to be exclusive of all other preexisting methods of denaturalization. With but one exception, however, (United States ex rel. Volpe v. Jordan),[14] none of the cases cited by him refer to the situation here but rather to a proceeding in which the Government has avowedly sought its authority to act from either section 15 of the 1906 Act or section 338 of the current Act. Of course the broad language gleaned from these cases supports the proposition that there must be strict compliance with the statute. There is no question that Congress so intended. But it is self evident that these cases cannot be used as authority on the present question, especially in view of the fact that in none of them does the government contend, even though it may have failed to comply with the statutory conditions for denaturalization, that the authority to proceed as it did could be found elsewhere. Furthermore, as far as we have been able to ascertain, in none of these cases was the attempted denaturalization instituted in the court issuing the naturalization order within the same term that the order was issued, as a part of the original proceeding, rather than as a separate proceeding under the statute. Likewise, appellee, in taking issue with the appellants' statement to the effect that the legislative history affords us little help in determining the intent of Congress, alludes to language in committee reports, statements of Cabinet Officers, and a statement made on the floor of the house, which gives as little support for his position as is found in those cases cited by him which we have rejected for inappositeness. Whatever language there may be is broad, vague and indefinite as pertains to the precise question before us.

Appellee is left, therefore, with but one clear authority in his favor, the Volpe case, where the question before the court was whether or not the respondent's plea in bar to Volpe's petition for writ of habeas corpus for release from respondent's custody on the ground that he (Volpe) had been unlawfully denaturalized should be sustained. Volpe, who had been naturalized by order of the Superior Court of Cook County on March 27, 1920, had his naturalization order vacated and set aside by that same court seven days later. In his petition he alleged that this had been unlawfully done because he had received no notice of the motion to vacate and set aside the order. The respondent's plea in bar was based on a prior case in which Volpe had sought to test the validity of a deportation order and which was adversely decided against him by the Supreme Court. It was respondent's position that all the questions involving the alienage of Volpe including his deportability were adversely decided against him in that case. In reversing the lower court for sustaining this plea in bar the court held that it was apparent from reading the opinions in the deportation litigation that the issue now presented was not decided, and the plea in bar was improperly sustained. At this point the court's opinion was sufficient to remand the case in order that the lower court might initially determine the issues as to the legality or illegality of the petitioner's denaturalization; but instead of doing that it chose to proceed with the remarks, *inter alia*, relied on so heavily now by the present appellee. It held, in essence, two things: (1) That the Nationality Act of 1940 provided the exclusive method whereby a person could be denaturalized, and (2) even if the Nationality Act was not exclusive, the proceedings complained of would be void for failure to give notice pursuant to the rules of the Superior Court of Cook County. Appellants here contend that that court's holding in regard to the exclusiveness of

14. 7 Cir., 1947, 161 F.2d 390.

remedy under the Nationality Act is *dicta;* but whether it is or not is immaterial to us; for in any event we feel it lacks 'force as authority for the reason that we believe it is based on a misunderstanding of the effect of a naturalization order as a judgment and of the effect that the Federal Rules of Civil Procedure, 28 U.S.C.A., have on such proceedings.

The Volpe decision states: "[A] State court when acting in naturalization matters does so as a Federal court or as an agent of the Federal government. It seems plain that when acting in such capacity it cannot depend upon an iota of authority which may stem from its own rules or the State law, whether embodied in statutory provisions or in the decisions of its courts." 161 F.2d page 395.

From this it concludes that it had no authority or jurisdiction to act in the premises unless pursuant to the federal statute. Principal reliance for this proposition is placed on a statement in Grahl v. United States [15] which when taken out of context would seem to lend support; but examined in the light in which it was used it is clear that it is conditioned by the purpose for which it was used, namely, to rebut the contention that the federal courts had no authority to vacate naturalization orders of state courts because that amounted to an invasion of the sovereign power of the state. That this statement from the Grahl case would not have been intended to convey the meaning ascribed to it is borne out by another statement 'found on the same page where it was said: "A court that has jurisdiction of a stated subject-matter and has the necessary parties before it is empowered to act honestly upon a mistaken view of the law as fully as upon a correct view; and its judgment, though based on errors of law, is impervious to collateral attack in other courts or in the same court, but not to direct attack. Direct attacks, through motions for rehearing, bills of review, and appeals, are usual and of old-time familiarity. Procedure under section 15 is new and unusual. But

none the less it is plainly a direct attack." 261 F. page 490.

The Volpe decision also relies upon United States v. Aakervik [16] to support this position, but in that case there is such clear *dicta, contra,* sustaining the appellants' contentions in the present case that we set it out in full: "[A naturalization order] being a judgment with the ordinary characteristics or attributes of a judgment of a court of record importing verity, it is not more vulnerable to attacks upon its validity and effectiveness as a final and conclusive adjudication than any other judgment of a court of record having competent jurisdiction in the premises. Following this is the contention that a judgment of the kind, under the long-established and well-settled practice of the courts of equity, cannot be impeached by direct proceeding for fraud, consisting of perjury or false swearing in rendering testimony, whereby the court was induced to give the judgment, nor for errors of the court in its deduction from the testimony adduced from which the judgment proceeded. Courts generally, excepting some perhaps of the more limited, have jurisdiction to reverse their own judgments and decrees during the term at which they are rendered. In pursuance of such authority they may, for error of law, or for fraud, mistake, or any irregularity that might seem to them to have affected either of the parties to the controversy injuriously, set aside their judgments and decrees, and award a new trial or rehearing, and thus give opportunity for righting whatever wrong may have been engendered. After the term has ended, however, the authority of the courts to this purpose ceases, unless extended by statute, or by motion, or some appropriate procedure taken within the time. This rule applies as well to equity procedure as to procedure at law. Other means of relief for the errors of the court are usually afforded by writ of error or appeal, and in equity a bill of review will lie, within rules prescribed by law, for evidence discovered after the decree has become final. All such procedings [sic] are taken and

15. 7 Cir., 1919, 261 F. 487.

16. D.C.Or., 1910, 180 F. 137.

prosecuted in the same suit or action and not by separate controversy. When, therefore, the term is at an end without the appropriate initiation of an available proceeding to revise or set aside the court's final judgment or decree, and no appeal or other means of review is prosecuted within the time afforded by authoritative regulation, such judgment or decree becomes an absolute finality, forever binding upon the parties and their privies, utterly without power of change, revision, revocation, or relief within the cause or proceeding in which it is rendered." 180 F. page 143.

The Volpe case also seems to find some support for its position in the Federal Rules of Civil Procedure, Rule 81(a) (2) and (6). Rule 81(a) (2) states: "In the following proceedings appeals are governed by these rules, but they are not applicable otherwise than on appeal except to the extent that the practice in such proceedings is not set forth in statutes of the United States and has heretofore conformed to the practice in actions at law or suits in equity: admission to citizenship * * *"

And Rule 81 (a) (6) says: "* * * The provisions for service by publication and for answer in proceedings to cancel certificates of citizenship under * * * 338 * * * remain in effect * * *"

All that Rule 81(a) (2) does is make the Federal Rules of Civil Procedure applicable to naturalization proceedings on appeal by either party. And all that Rule 81(a) (6) does is make them inapplicable as regards to the time allowed for notice and answer in proceedings under section 338 of the Nationality Act of 1940. But we cannot see how this helps that court because it still does not say that the rules are inapplicable in cases such as this one where there is an attempt to vacate and set aside a naturalization order during the period when the court still has jurisdiction over the proceedings. At best the Federal Rules are equivocal on this point. It certainly cannot be said that they support the

view that the proceedings under section 338 are exclusive of all other methods by which a naturalization order may be vacated and set aside.

Nor does the Volpe decision even mention the earlier case of In re Macoluso's Naturalization,[17] a leading authority for appellants' position here. As authority therefore, the Volpe case stands much weakened in our eyes.

Appellants rely principally on In re Macoluso's Naturalization,[18] United States v. Aakervik,[19] Petition of Weltzien,[20] and United States v. Ovens.[21] Of these the Macoluso case, being most directly in point, is the strongest authority favoring their position, and appellee has been unable to assail its holding other than to say that it presents a remarkable illustration of the wisdom of Congress in making section 338 exclusive because there the naturalization certificate of a person dead for many years was cancelled. In addition to assuming his premise for the purposes of his observation, appellee also fails to realize that the Macoluso case was a leading authority of 28 years standing for the very proposition now in issue when Congress in 1940 substantially reenacted section 15 of the 1906 Act. Certainly, had Congress felt that it presented an evil to be rectified, it would have indicated in some way its intention to correct the impression of that case.

The Weltzien case involved a motion by the government for a rehearing on newly discovered evidence in a naturalization proceeding. The motion was made within the same term of court and in no way complied with the requirements of section 338. The district court denied the motion but in doing so had to meet the contention that the government's exclusive remedy was under section 338. It said in this regard:

"* * * Even a perfunctory examination of the matter discloses that this argument is untenable.

---

17. Note 6, supra.

18. Note 6, supra.

19. Note 16, supra.

20. D.C.N.Y.1946, 68 F.Supp. 1000.

21. 4 Cir., 1926, 13 F.2d 376.

"Sec. 738 [sec. 338] which is practically identical with Sec. 15 of the Nationality Act of June 29, 1906, outlines the procedure to be followed in a cancellation or revocation proceeding and is supplemental to any other remedy which is available to obtain a rehearing of the original naturalization proceeding * * *

"The proceeding before this court is not a revocation or cancellation proceeding. It is, as I stated at the outset, an application for a rehearing predicated upon alleged newly discovered evidence. If I am correct in my assertion that an order granting citizenship is no different than any other judgment, it must of necessity be as vulnerable as any other kind of judgment.

"There have been instances where petitions for naturalization have been denied and thereafter, on motion of the government, granted on newly discovered evidence. Obviously in such situations no problem is encountered since both the government and the petitioner are satisfied.

"The converse of this proposition is equally true. So that an order granting citizenship may be vacated on newly discovered evidence." 68 F.Supp. page 1002.

Although not involving precisely the point in issue here, the Weltzien case certainly supports the appellants' position. Appellee attacks it by saying, "The statement is described, by Judge Mandelbaum who made it, as 'a prefunctory examination of the matter' " which has been "authoritatively held erroneous in its own jurisdiction. See U. S. ex rel. Stabler v. Watkins, 168 F.2d 883 (C.C.A.2nd, 1948)." Appellee is in error, however, in saying that Judge Mandelbaum's words in regard to a "perfunctory examination" of the matter purport to characterize the type of examination which he makes in the following paragraphs. Appellee conveniently omits the word "even" from his quotation. Nor is there any support for appellee's claim that this statement had been held "authoritatively erroneous." The case which he cites, arguendo, for the holding, neither mentions the Weltzien case nor in any way attempts to deal with this kind of a situation. It falls into that group of cases cited by appellee which are inapposite to the question at hand because they deal with the entirely different situation where the government is professedly proceeding under the statute to set aside a naturalization order.

The Ovens case cited by appellants inferentially supports their contentions. There the court held that although the government had failed to appeal from the denial of a motion to cancel and declare void a naturalization certificate made in the same court, within three months of the issuance of the certificate, the government was not thereafter estopped from bringing an independent bill in equity elsewhere at a later date for cancellation of the naturalization certificate because such a motion in the original proceedings is not the equivalent of a proceeding under section 15 of the 1906 Act. The court said, 13 F.2d at page 377 that that section "creates a new remedy, which in some respects is broader than that existing independently of statute * * *" though narrower than the protection afforded the government on appeal in the original cause.[22] Thus the court indirectly recognized that the government in effect has two bites of the apple in these proceedings, one by motion in the original cause and the other by the statutory proceeding. Appellee thinks that the "necessary rationale" of the decision supports his view that the motion in the original proceeding was void for noncompliance with the statute and hence was not a bar to the later action by the government. Otherwise, he claims, all the requirements of res judicata were present. What he has failed to realize, however, is that an additional remedy has been created by statute which removed such proceedings from the bar of res judicata created by the adjudication in the original cause.

We have already sufficiently dealt with the Aakervik case, supra. Admittedly the statements there are dicta, but they clearly support appellants' position here, and are not, as appellee characterizes them, ambiguous.

22. Tutun v. United States, supra, note 7.

Certainly, as we have said, independently of any decisional law, we would hold in favor of the appellants because of the inherent and historical power of a court over its own judgments within the same term in which they were rendered; because of the fact that it has been held by the Supreme Court that orders of naturalization are like any other judgments of the court issuing the order; and because such powers of a court are not to be construed cut off unless by explicit language. But in addition the weight of authority favors the appellants, and it is the opinion of this court that section 338 of the Nationality Act of 1940 is cumulative in effect and does not exclude the other available remedies for setting aside and vacating naturalization orders as judgments at least while the issue is still in the course of its original proceeding.

It follows, therefore, that the District Court erred in granting appellee the summary judgment. The case is accordingly reversed and remanded with instructions to the lower court to enter a judgment dismissing the complaint pursuant to appellants' motion below.

Reversed and remanded.