**In re Greenwald Minors**

*Joshua D. Lock,* for petitioner.

*Chester Gitt Schultz,* for Adams County Children's Services.

MacPHAIL, P. J., February 14, 1973.—On July 25, 1972, Adams County Children's Services, an approved agency for the care and supervision of children, operating under the sponsorship and direction of the Department of Welfare of the Commonwealth of Pennsylvania and the County of Adams, filed petitions for the involuntary termination of parental rights as to the five minor children of Rosemary and Ronald Lee Greenwald. At that time, the children ranged in age from three to eight years. As requested by the petitions, a time for hearing was fixed and the agency was directed to give 10 days written notice of the time and purpose of the hearing by certified mail to the natural parents of the children. On August 7th, the date fixed for the hearing, all petitions were joined for hearing at one time, the agency presented evidence that notice of the time and purpose of the hearing had been sent as directed by the court to the last known address of the natural parents. That notice was returned showing that delivery could not be made because the addressees had moved and had left no forwarding address. The natural parents did not appear at the hearing nor were they represented by counsel.

At the hearing, witnesses testified on behalf of the agency and the testimony was recorded and transscribed. It appears from the testimony at that hearing that all five children were delivered into the care of the agency on September 14, 1970, by a voluntary placement of the parents because of a complete family

breakdown. The family had been evicted from their home, had no means of financial support and the parents were unable to care for their children. The children remained in the custody of the agency in foster home care continuously from the date of the voluntary placement until the date of the hearing on the petition to terminate parental rights. Witnesses testified that the last contact either parent had had with the children was April 17, 1971. Prior to April 17, 1971, the agency made sincere efforts to reconstruct the family and encouraged visitation between the parents and their children. After April 17, 1971, the agency made repeated attempts through relatives of the natural parents to locate them without success. Just two weeks prior to the hearing on the involuntary termination of parental rights, the agency contacted both the maternal and paternal grandparents of the subject children and neither set of grandparents could give the agency any information about the whereabouts of their children.

When the children were placed in the custody of the agency in 1970, the parents agreed to pay the sum of $80 per month for the support of their children. In 1970, only $20 was received. In 1971, $250 was paid, but nothing was paid after March 26, 1971. After the usual arrearage notices, all of which were returned as undeliverable, a bench warrant was issued for the father's arrest for failure to comply with the court order. Attempts were made to serve the warrant in Adams and Dauphin Counties. The support officer reported that no service of the warrant was had.

On the basis of all of the testimony received at the hearing, we entered decrees on August 8, 1972, terminating the parental rights of Rosemary and Ronald Lee Greenwald with respect to their five children on the ground that the parents had evidenced a settled

purpose of relinquishing parental claim to their children for a period of at least six months: section 311(1) of the Adoption Act of July 24, 1970, P. L. 620, 1 PS §311.

On September 5, 1972, notice of intent to adopt was filed with respect to Sandra Kathleen Greenwald, age 3. On December 28, 1972, a notice of intent to adopt was filed with respect to David John Greenwald, age 4.

On December 12, 1972, the natural mother filed petitions to open and set aside our orders terminating her parental rights with respect to each of the children, alleging that she had now returned to the Commonwealth where she resided and worked, that she "does now and has always" manifested great love and concern for her children and that valid reasons existed for the apparent disregard of the children by the mother. A rule was issued upon the Adams County Children's Services to show cause why the prayers of the petitions should not be granted. A hearing was held on those rules. At the hearing, the natural mother appeared and testified. She did not contradict any of the testimony we had heard at the involuntary termination of parental rights proceeding. She said that she and her husband lived at various addresses after the children were placed with Adams County Children's Services, that her husband had committed a crime and that was why they kept their location a secret and that they had finally located in the State of Virginia where her husband was successfully employed, but before she could contact Adams County Children's Services to advise them that they wanted to have their children back, her husband deserted her. She says she does not know the present whereabouts of her husband. She presently resides in a two bedroom house with her parents in the City of Harrisburg. She

is gainfully employed. She says that if the children are returned to her, her mother will assist her with their care. Both her mother and father were present and verified these facts. Mrs. Greenwald said she did not understand when she placed the children with Adams County Children's Services that proceedings could be taken to terminate her parental rights.

It must be observed at the outset that no exception has been taken to the procedures followed by the agency or the court with respect to the termination of the parental rights of the present petitioner. Petitioner here appeals to the conscience of the court to obtain her relief. Petitioner does not allege that fraud was perpetrated upon the court, that the truth has been suppressed or that the termination decrees are void or mere nullities for lack of jurisdiction, notice to the parties, etc. See Cochran v. Eldridge, 49 Pa. 365 (1865), and Macoluso's Naturalization, 237 Pa. 132 (1912).

On the other hand, we are well aware of the grave responsibilities imposed upon the courts where the permanent severance of the parent-child relationship is involved: S.K.L. v. Smith, 480 S.W. 2d 119 (Missouri Court of Appeals, 1972) and Involuntary Termination of Parental Rights, 448 Pa. 528, 297 A. 2d 117 (1972). It will be noted that in both the Smith and Jones cases, supra, the natural parents actively contested the entry of a decree. Here, the decrees were entered before the natural parent interposed an objection. Furthermore, in reliance upon the court's decrees, adoption proceedings have been commenced with respect to two of the children.

While the court has the inherent right to set aside its own orders, judgments or decrees, where the circumstances warrant, it must necessarily follow in the interest of certainty in the law that such orders, judg-

ments and decrees should not be disturbed in the absence of compelling circumstances such as fraud, etc., supra. Thus, while we should not disturb a parent-child relationship in the absence of compelling evidence, Jones case, supra, neither should we disturb our decrees in the absence of the same kind of compelling evidence. The allegations in the petition and the testimony were simply not adequate in this respect. There is no doubt in our mind, even in the face of petitioner's testimony, that there were proper grounds to enter the involuntary termination decrees. Assuming, for purposes of argument only, that petitioner did have valid reasons for her failure to reveal her geographical location, those same reasons would certainly not have prevented her from sending a birthday card, a Christmas gift or just a letter to one or more of her children. See Stoudt Adoption, 9 Lebanon 66 (1962); Folkers Adoption, 78 York 161 (1964), and Jacono Adoption Case, 426 Pa. 98 (1967).

However, we must ask ourselves to what avail is it to separate a mother from her children where no other family relationship has been established with respect to those children and where the mother has demonstrated both the desire and the capability of caring for their children at this time? Foster family placement is, at best, temporary care. Where possible, children ought to have some family ties.

Thus, we come to the ultimate question where we have found neither statutory law nor court decisions to guide us. That question is, once parental rights have been extinguished in an involuntary proceeding, may those rights be subsequently restored where the interests and the welfare of the children would be promoted by that action? There is no authority in the Adoption Law of July 24, 1970, for us to take such action. In "abandonment" cases under the previous Adoption

Law of April 4, 1925, P. L. 127, 1 PS §1-7, the issue of abandonment never had to be resolved until new parental rights were being sought by adoption proceedings. Thus, in Deisher Adoption, 60 Berks 160 (1968), it was held that once an abandonment exists, the parent will not be heard at a later date to defend or explain his abandonment. Obviously, the Act of July 24, 1970, by its involuntary termination proceeding provisions, attempts to avoid that kind of confrontation in adoption proceedings by resolving the issue prior to the time such proceedings are undertaken. It appears to us, however, that the purpose of the law in that respect was to promote the certainty of adoption proceedings *once they are commenced.* Where, as here, such proceedings have been undertaken with respect to two of the children and where, as here, the possibility of the adoption of the older children is much less likely than with the younger ones, we feel that a "hard line" attitude with respect to the natural mother may be unwise and not in the best interests of the children. On the other hand, where new parental ties have been formed, then we feel that the interests of the child will best be served by leaving that relationship undisturbed.

In summary, we affirm our decision with respect to the involuntary termination decrees entered with respect to all of the Greenwald children. In the interests of the children who are presently the subject of adoption proceedings, we will deny the petition to open and vacate. In the best interests of the children who are not involved in adoption proceedings at the present time, we will hold a further hearing at a later date to give Adams County Children's Services ample opportunity to investigate the petitioner's present home situation and her good faith with respect to her parental responsibilities.

## DECREE OF COURT

And now, February 14, 1973, the petition to open and vacate is herewith denied with respect to Sandra Kathleen and David John Greenwald. A further hearing is fixed for the third day of April 1973, at 3 p.m., on the petition to open and vacate with respect to the other three children. Adams County Children's Services is directed to cause an investigation to be made of the personal and home conditions of the petitioner to enable the court to determine if her parental rights should be restored with respect to Julie, Ronald and Shirley Greenwald, and to make a written report to the court of their findings on or before the date of the continued hearing.